# United States Bankruptcy Appellate Panel
## FOR THE EIGHTH CIRCUIT

---

## 00-6102EA

---

In re: Samuel Jesse Fellner      \*

     Debtor.      \*

Kim Fellner,      \*

     Plaintiff - Appellee,      \*

     v.      \*

Samuel Jesse Fellner,      \*

     Defendant - Appellant      \*

Appeal from the
United States Bankruptcy Court
for the Eastern District of Arkansas

---

Submitted: January 3, 2001
Filed: January 24, 2001

---

Before, KOGER, Chief Judge, HILL and DREHER, Bankruptcy Judges

---

KOGER, Chief Judge

Debtor Samuel Jesse Fellner appeals from the judgment of the Bankruptcy Court[1] determining that certain debts he was ordered to pay pursuant to his divorce decree were excepted from his discharge under 11 U.S.C. § 523(a)(15). Because the Bankruptcy Court applied the correct legal standard and its findings of fact were not clearly erroneous, we affirm.

---

[1] The Honorable Mary D. Scott, Bankruptcy Judge for the Eastern District of Arkansas.

Factual Background

Samuel Fellner and Kim Fellner were divorced on July 13, 1999. Among other things, the divorce decree provided that each party was to pay certain individual and marital debts. As relevant here, the divorce decree required Samuel to pay a debt in the amount of $11,306.00 to MBNA MasterCard Platinum and a debt in the amount of $10,500.00 to First Arkansas Bank and Trust.

The MBNA MasterCard account which Samuel was required to pay was actually in Kim's mother's name and Kim was an "authorized user" of the card. Kim's mother had given this credit card, along with two other credit cards, to the Fellners shortly after they were married because they had not established credit of their own. It was understood between them that the Fellners would pay for any charges they incurred on the accounts. Thus, although Kim's mother was the party liable to MBNA as such, Samuel was ordered in the divorce decree to pay that obligation.[2]

The debt to First Arkansas Bank and Trust was the result of a renewable loan for which the Fellners had pledged a Certificate of Deposit as collateral. Kim had bought the $10,000 CD from proceeds she received in the settlement of a lawsuit which she initiated prior to the parties' marriage. The Fellners bought the CD with the intention of using the money to fund their child's education. After their credit card debts began to mount, they started taking loans, pledging the CD as collateral, and used the proceeds to pay some of the credit card debts. Samuel was ordered in the divorce decree to repay that loan so that the Certificate of Deposit would not be forfeited and used to set off the balance due on the loan.[3]

The Debtor made a few payments on the obligations pursuant to the divorce decree prior to filing his Chapter 7 bankruptcy petition on December 10, 1999. Kim filed an adversary complaint seeking to have these two debts declared nondischargeable under §§ 523(a)(5) and 523(a)(15).

---

[2] The divorce decree required Kim to pay the debts she and the Debtor had incurred on the two other credit cards which, like the MBNA account, she had permission to use but on which Kim's mother was solely liable. These included a debt to First USA Visa in the amount of $13,300.00 and a debt to Montgomery Wards in the amount of $420.00.

[3] At the time of the trial on the nondischargeability action, the Certificate of Deposit had apparently been forfeited and used to set off the loan at First Arkansas Bank.

The evidence at trial showed that the parties are both employed at a local grocery store, each earning approximately $9.65 per hour. The Debtor has a high school education and works mostly full time at the store as a night stocker. His Schedule I reveals that he earns $1,672.67 per month, less $401.44 in social security and payroll taxes and $268.67 in child support paid to Kim, leaving him with a net monthly income of $1,002.56. The Debtor lives with his parents and his Schedule J reveals the following monthly expenses:

| | |
|---|---|
| Telephone | $  75.00 |
| Food | 200.00 |
| Clothing | 50.00 |
| Laundry and Dry Cleaning | 15.00 |
| Medical and Dental expenses | 40.00 |
| Transportation (not including car payments) | 200.00 |
| Auto insurance | 100.00 |
| Truck payment (in parents' name) | 311.80 |
| Medical Bill | 20.00 |
| | |
| Total monthly expenses | $1,011.80 |

This leaves the Debtor with a monthly deficit of $8.24.

Kim works approximately twenty-five hours per week. She testified that after the divorce, she reduced the number of hours she worked so that she could pursue a college degree and because she has custody of the parties' only child who is disabled. She testified that without a college degree, she is unable to make enough money to pay her bills and that due to the circumstances concerning her school schedule and her child's care, as well as her employer's scheduling needs, she is unable to work more than the twenty-five hours per week. Kim receives $62.00 per week in child support and the child receives supplemental social security income in the approximate amount of $274.00. The child attends a private school which costs Kim $150.00 per month. Kim testified that since she is no longer able to borrow against the CD, she is paying for the child's tuition out of the student loans she has incurred to fund her own education.

3

According to the documentation she filed with the Bankruptcy Court, Kim's income as a cashier at the grocery store is $1,045.00 per month, less payroll taxes and social security deductions in the amount of $261.00. With the child support payments in the amount of $248.00 per month and the monthly social security benefits in the amount of $274.00 which she receives on behalf of her child, Kim has a net monthly income of $1,306.00. Her monthly expenses are as follows:

| | |
|---|---:|
| Rent | $ 325.00 |
| Electricity and heating fuel | 135.00 |
| Water and sewer | 60.00 |
| Telephone | 65.00 |
| "Arkla Gas" | 35.00 |
| Cable | 40.00 |
| Home Maintenance | 15.00 |
| Food | 325.00 |
| Clothing | 50.00 |
| Laundry and dry cleaning | 15.00 |
| Medical and dental expenses | 30.00 |
| Transportation (not including car payments) | 160.00 |
| Recreation, clubs and entertainment, etc. | 50.00 |
| Renter's insurance | 44.00 |
| Life insurance | 120.00 |
| Auto insurance | 33.00 |
| Personal Property Tax | 10.00 |
| Medical Bills | 50.00 |
| Total monthly expenses | $1,562.00 |

According to these figures, Ms. Fellner operates at a monthly deficit of $256.00.

Based in the evidence and testimony submitted at trial, the Bankruptcy Court found that the Debtor's obligation on the two debts he was ordered to pay in the divorce constituted a property division and not support; that the Debtor had the ability to pay the obligations, particularly if he was not required to make the payments on his truck; that the detriment to Kim outweighed the benefit to the Debtor if the

4

debts were discharged; and that therefore, the debt should be declared nondischargeable under § 523(a)(15).[4]  The Debtor appeals.

Discussion

We review findings of fact for clear error and legal conclusions *de novo*.  See O'Neal v. Southwest Mo. Bank (In re Broadview Lumber Co.), 118 F.3d 1246, 1250 (8th Cir. 1997); Hartford Cas. Ins. Co. v. Food Barn Stores, Inc. (In re Food Barn Stores, Inc.), 214 B.R. 197, 199 (B.A.P. 8th Cir. 1997); see also Fed. R. Bankr. P. 8013.  "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with a definite and firm conviction that a mistake has been committed." Anderson v. Bessemer City, 470 U.S. 564, 573, 105 S.Ct. 1504, 1511, 84 L.Ed.2d 518 (1985) (quoting United States v. U.S. Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed.746 (1948)); accord In re Waugh, 95 F.3d 707, 711 (8th Cir. 1996); Chamberlain v. Kula (In re Kula), 213 B.R. 729, 735 (B.A.P. 8th Cir. 1997).  "If the bankruptcy court's account of the evidence is plausible in light of the entire record viewed, it must be upheld even though we may have weighed the evidence differently had we been sitting as the trier of fact." Forbes v. Forbes (In re Forbes), 215 B.R. 183, 187 (B.A.P. 8th Cir. 1997) (citing Anderson, 470 U.S. at 573-74, 105 S.Ct. at 1511). When there are two permissible views of the evidence, we may not hold that the choice made by the trier of fact was clearly erroneous.  In re Lemaire, 898 F.2d 1346, 1349 (8th Cir. 1990).

"Section 523(a)(15) excepts from discharge those debts arising out of marital dissolution proceedings that do not constitute nondischargeable alimony, maintenance or support under § 523(a)(5); i.e., property settlement awards."  Moeder v. Moeder (In re Moeder), 220 B.R. 52, 54 (B.A.P. 8th Cir. 1998).  Specifically, § 523(a)(15) renders nondischargeable any debt:

> not of the kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation or in connection with a separation agreement, divorce decree or

---

[4]  The Bankruptcy Court announced its decision and the reasons therefor from the Bench following the trial and subsequently entered an Order memorializing the decision announced from the Bench.

other order of a court of record, a determination made in accordance with State or territorial law by a governmental unit unless –

> (A) the debtor does not have the ability to pay such debt from income or property of the debtor not reasonably necessary to be expended for the maintenance or support of the debtor or a dependant of the debtor and, if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business; or
>
> (B) discharging such debt would result in a benefit to the debtor that outweighs the detrimental consequences to a spouse, former spouse, or child of the debtor.

11 U.S.C. § 523(a)(15). The Debtor in this case does not contest the Bankruptcy Court's finding that the obligations at issue here constituted a property division and therefore fall within § 523(a)(15) and not within § 523(a)(5). Rather, the Debtor asserts that the exceptions enumerated in subparagraphs (A) and (B) apply.

> We have addressed this provision in previous decisions:
>
> the burden of proof, both in terms of going forward with the evidence and the burden of persuasion is on the creditor, [here Kim Fellner], to show only that the debt owed to her by the debtor, [Samuel Jesse Fellner], is a debt that arises from a divorce, other than one in the nature of alimony, maintenance, or support. The burden of going forward with the evidence and the burden of persuasion then shifts to the debtor, [here Samuel], to prove either of the defenses.

Rush v. Rush (In re Rush), 237 B.R. 473, 475 (B.A.P. 8th Cir. 1999) (citing In re Moeder, 220 B.R. at 56). Since it is uncontested that Kim met her burden of showing that the debt was of the kind described in § 523(a)(15), the burden shifted to the Debtor to show either that he does not have the ability to pay the debt or that on balance, the debts should be discharged because doing so would result in a benefit to him that outweighs the detriment to Kim. Id. at 475-76. If he can prove that either of these exceptions exists, then the debt should be discharged. See In re Moeder, 220 B.R. at 55.

6

In its decision announced from the Bench, the Bankruptcy Court correctly stated the law:

> If I find that [the debt to Kim is] not in the nature of a support obligation under (a)(5) then I'd look at (a)(15); and Congress intended in the first instance that property settlements not be discharged, that debtors shouldn't use bankruptcy to do that; however, they did give the debtors the possibility of discharging the debt but only in certain circumstances.

> If the debtor can show no ability to pay the debt, then I go no further, and the debt can be discharged. If the debtor can afford to pay the debt, then I have to do some kind of balancing.

The Court then found, in effect, that if the Debtor eliminated the $311.80 truck payment from his monthly expenses, he would have the ability to pay the debt. The Court determined that although the Debtor's monthly expenses in general were not extravagant, the expense for his Ford Ranger pickup truck was excessive or unnecessary under the circumstances and that if this expense were eliminated or reduced, it would free up funds to pay the debts as ordered in the divorce decree. The Debtor asserts clear error in this finding.

Regarding the truck, the evidence showed that the Debtor acquired the Ford Ranger pickup truck in May 1999, while the Fellners were separated but before their divorce. The truck was financed in the Debtor's parents' name and they appear to be the title-holders: the Debtor did not list the truck as an asset in his bankruptcy schedules and although he lists the payment amount (which he pays directly to Ford Motor Credit) on his Schedule J, he did not list a debt to either his parents or to Ford in his schedules pertaining to secured and unsecured debts.[5] In addition, although not specifically mentioned by the Bankruptcy Court, we note that the Debtor's Schedule J reflects not only $311.80 for the truck payment, but also $200.00 per month in transportation (not including car payments) and $100.00 per month for automobile insurance, thus indicating that the Debtor actually incurs monthly expenses totaling over $600.00 in relation to the truck.

---

[5] Other than Schedules I and J, the Debtor's bankruptcy schedules are not contained in the record on appeal; we have gleaned from the testimony and other documents in the record that the Debtor did not list the truck as an asset, nor did he list any debt related to the truck in his other schedules.

7

The crux of Debtor's argument is that the Bankruptcy Court erred in finding the truck payment expense was unnecessary. He suggests that if he were to lose this vehicle, he would not have transportation to work and that without reliable transportation, it is doubtful he could remain gainfully employed. The Debtor claims, in effect, that the Bankruptcy Court erred because Kim offered no evidence that the truck is unnecessary or that a lesser expensive form of transportation was available.

However, because it is the Debtor who bears the burden of proving that he does not have the ability to pay the obligations, it was his burden to show that his truck expenses were necessary; it was not Kim's duty to show they were unnecessary. The Debtor presented no evidence to suggest that his vehicle expenses were reasonable and necessary, that lesser expensive transportation was unavailable, or that the truck payments would not fall to his parents if he did not make them. As a result, in light of the fact that the Debtor presented no evidence regarding the necessity or reasonableness of his truck expenses, and in light of the discretion we are to afford the Bankruptcy Court on issues of fact, we cannot say that the Bankruptcy Court clearly erred in finding that the truck expense was excessive and that the Debtor therefore failed in his burden of proving that he could not afford to pay the obligations assigned in the divorce decree. In sum, we simply are not left with a firm and definite conviction that the Bankruptcy Court's decision was erroneous. See Anderson v. Bessemer City, 470 U.S. at 573, 105 S. Ct. at 1511.[6]

In his second point, the Debtor asserts that the Bankruptcy Court erred in finding that on balance, discharging the debt would result in detriment to Kim that outweighed any benefit to the Debtor. See 11

---

[6] We note that this case is distinguishable from our decision in In re Moeder, 220 B.R. 52. In that case, we determined that the Bankruptcy Court erred in declaring a property settlement debt nondischargeable under § 523(a)(15) because the Bankruptcy Court did so despite finding that the debtor lacked the ability to pay the obligation. In other words, the Bankruptcy Court in Moeder applied subsections (A) and (B) of § 523(a)(15) in the conjunctive rather than the disjunctive, and we determined that this was error: we held that if the debtor proves either of those affirmative defenses to nondischargeability, the debt should be discharged. Id. at 55. In contrast, in the case at bar, the Bankruptcy Court ruled that the Debtor failed to prove either of the affirmative defenses, specifically determining that the Debtor has the ability to repay the debts at issue.

8

U.S.C. § 523(a)(15)(B). Primarily, the Debtor suggests that the Bankruptcy Court ignored the fact that Kim is not personally liable on the MBNA Platinum MasterCard or on the two other credit card accounts which were in Kim's mother's name. He contends that if he is discharged of the obligation to pay the MBNA debt, the creditors cannot come after Kim, nor does Kim's mother have a legally enforceable right to collect from Kim. Thus, he asserts, discharging the debts in his bankruptcy will result in no detriment to Kim and that the balance therefore tips in his favor.

Even assuming that Kim is not legally responsible on the MBNA account, the evidence and testimony reveal other detrimental consequences to Kim if the debt was not repaid. Specifically, Kim lives with her child on property adjacent to land on which her mother lives in a mobile home. Kim pays her mother $325.00 per month in rent which is intended to cover Kim's mother's mortgage and insurance payments on the property on which Kim lives. Kim testified that her mother sometimes helps her with the rent and that she actually pays rent only about half the time because she cannot afford to pay the rent every month. Kim also testified that in September 1999, her mother evicted her from the property because she and her mother had had a disagreement about her being behind on the rent. Kim's mother apparently permitted Kim to move back to the property after Kim had some trouble with her replacement housing, but it can be inferred from the testimony that Kim faces eviction if she does not stay somewhat current with the rent. In addition, Kim testified that she has not been able to pay the First USA Visa debt (on which her mother is liable and which Kim was ordered to pay in the divorce) and that First USA was harassing her mother for payment. Kim's testimony indicated that her mother is in no position to absorb the debts the Fellners incurred in her name. Consequently, the evidence showed that if Kim's financial circumstances deteriorate much further, it is likely that her mother would evict her and the child and it seems unlikely that Kim would be able to obtain other housing on terms as favorable as the situation she currently has. Thus, although Kim may not be legally liable on the debt to MBNA, Kim certainly faces detrimental consequences if the Debtor's obligation to pay that debt is discharged.

In sum, we cannot say that the Bankruptcy Court clearly erred in finding that in light of Kim's responsibility for caring for the parties' child and the Debtor's fairly recent purchase of a relatively expensive vehicle, the balance tipped in favor of Kim under § 523(a)(15)(B).

As the Bankruptcy Court commented, this is a difficult case and, arguably, there are two permissible views of the evidence. Nevertheless, because the Bankruptcy Court's finding was plausible in light of the entire record, we cannot say it was clear error for the Court to rule the way it did. See In re Forbes, 215 B.R. at 187; In re Lemaire, 898 F.2d at 1349. As a result, we must affirm.

### Conclusion

Because the Bankruptcy Court applied the correct legal standard and because we cannot say that its factual findings were clearly erroneous, the judgment of the Bankruptcy Court is affirmed.

A true copy.


Attest.


CLERK, UNITED STATES BANKRUPTCY APPELLATE PANEL
FOR THE EIGHTH CIRCUIT