**In re Tammy Lynn ALLGOR, Debtor.**

**Christopher John Whitlach, Plaintiff,**

**v.**

**Tammy Lynn Allgor, Defendant.**

**Bankruptcy No. 01–01484–C.**

**Adversary No. 01–9146–C.**

United States Bankruptcy Court, N.D. Iowa.

March 22, 2002.

Steven G. Klesner, Iowa City, IA, for debtor.

## ORDER RE COMPLAINT TO DETERMINE DISCHARGEABILITY

PAUL J. KILBURG, Chief Judge.

This matter came on for trial on January 17, 2002. The matter before the Court is a Complaint to Determine Dischargeability of Debt pursuant to 11 U.S.C. § 523(a)(15). Plaintiff Christopher J. Whitlatch appeared personally with his attorney Anne E.H. Hoskins. Debtor Tammy L. Allgor appeared personally with her attorney Steven G. Klesner. After the presentation of evidence and arguments, the Court took the matter under advisement. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(I).

## STATEMENT OF THE CASE

Debtor Tammy Lynn Allgor and Plaintiff Christopher John Whitlatch were granted a stipulated Decree of Dissolution of Marriage on November 19, 1998. They waived all rights to support or alimony. They agreed that each party would assume certain debts incurred during the marriage. Plaintiff agreed to pay certain joint obligations. Debtor assumed responsibility for a joint $3000 credit card debt owed to MasterCard. It is this obligation which is at issue here. The parties agreed to "assume and hold the other harmless from any obligations to pay the debts which each is assuming."

Debtor made payments on the Master-Card debt for one year. She discontinued making payments in November 1999. Plaintiff, after receiving notices that the debt was still outstanding, paid the remaining balance on the account to protect his credit rating. Debtor filed a joint Chapter 7 petition with her current spouse on June 27, 2001. A discharge was entered on August 6, 2001. Plaintiff is seeking to have this debt excepted from discharge pursuant to § 523(a)(15).

## CONCLUSIONS OF LAW

The dischargeability of non-support debt incurred in the course of a divorce is governed by § 523(a)(15) of the Code. This section provides that "a discharge under 727 of this title does not discharge an individual debtor from any debt—not of a kind described in paragraph (5) that is incurred by the debtor in the course of a divorce or separation." 11 U.S.C. § 523(a)(15). To find a § 523(a)(15) debt nondischargeable, the court must initially determine whether the debt is one not of kind described in § 523(a)(5). *In re Fellner*, 256 B.R. 898, 902 (8th Cir. BAP 2001).

If the debt is a nonsupport property settlement award, a rebuttable presumption of nondischargeability is created. *In re Moeder*, 220 B.R. 52, 56 (8th Cir. BAP 1998). The burden shifts to Debtor to establish that either: 1) she is unable to pay the debt; or 2) the benefit to her of discharging the debt would outweigh the detriment to Plaintiff. *Id.* Debtor must prove one of these exceptions to § 523(a)(15) by a preponderance of evidence. *Grogan v. Garner*, 498 U.S. 279, 286, 111 S.Ct. 654, 112 L.Ed.2d 755 (1991).

### Ability to Pay

An inability to pay exists under § 523(a)(15)(A) if excepting a debt from discharge would reduce a debtor's income to below a level necessary for the support of the debtor and the debtor's dependents. *In re Hall*, No. 98–1035–W, slip op. at 4 (Bankr.N.D.Iowa September 16, 1999) (citing *In re Anthony*, 190 B.R. 433, 436 (Bankr.N.D.Ala.1995)). To make this determination, the Court may consider factors similar to those applied in a Chapter 13 disposable income analysis under & § 1325(b)(2). *In re Windom*, 207 B.R. 1017, 1021 (Bankr.W.D.Tenn.1997) (noting the language in § 523(a)(15)(A) is nearly identical to language in § 1325(b)(2)).

In calculating disposable income for purposes of Chapter 13, this Court looks at Debtor's current and future financial status, including potential earnings, and whether Debtor's expenses are reasonably necessary. *In re Barker*, No. 97–01813–C, slip op. at 8 (Bankr.N.D.Iowa Apr. 7, 1998) (citing *In re Jodoin*, 209 B.R. 132, 142 (9th Cir. BAP 1997)). In evaluating whether expenses are reasonably necessary, this Court seeks a balance between allowing a debtor a reasonable lifestyle, while insuring a serious effort to pay creditors by eliminating "unnecessary and unreasonable expenses." *In re Beckel*, 268 B.R. 179, 183 (Bankr.N.D.Iowa 2001); *In*

*re Gleason,* 267 B.R. 630, 633 (Bankr. N.D.Iowa 2001).

■ First, the Court determines which expenses are essential and which are discretionary. After delineating expenses as either essential or discretionary, this Court "lumps together" discretionary expenses to determine whether they are excessive in light of the debtor's lifestyle and the burden of his or her unpaid debts. *Beckel,* 268 B.R. at 184 (citing *In re Nissly,* 266 B.R. 717 (Bankr.N.D.Iowa 2001)). The Court may also consider whether a debtor's disposable income will allow for substantial and meaningful monthly payments within a reasonable time. *In re Metzger,* 232 B.R. 658, 665 (Bankr.E.D.Va.1999).

### *Benefit v. Detriment*

■ The second prong of the alternative test under § 523(a)(15) requires the Court to determine whether the benefit to Debtor is greater than the detriment to Plaintiff in discharging the debt. *Fellner,* 256 B.R. at 904. In balancing benefit versus detriment, the Court compares the relative standards of living of the parties. *In re Lumley,* 258 B.R. 433, 437 (Bankr. W.D.Mo.2001). When a debtor's standard of living is greater than or equal to a creditor's, discharge of the debt is not warranted. *In re Williams,* 210 B.R. 344, 347 (Bankr.D.Neb.1997). Conversely, if the debtor's standard of living falls materially below that of the creditor's, a court may grant a discharge under § 523(a)(15). *Id.*

■ When a debtor's former spouse has suffered a loss due to the failure of the debtor to pay an assumed debt which the former spouse has subsequently paid, the balance tips in favor of a finding of detriment to the former spouse that is greater than a benefit to the debtor. *In re Molino,* 225 B.R. 904, 909 (6th Cir. BAP 1998); *In re Smither,* 194 B.R. 102, 111 (Bankr. W.D.Ky.1996). This factor is particularly significant where the debtor is unable to provide evidence of a benefit that would outweigh the detriment to the former spouse. *Molino,* 225 B.R. at 909; *Smither,* 194 B.R. at 111.

### *ANALYSIS*

■ The parties have stipulated that the debt is one not of the kind found in § 523(a)(5). The facts place this case within the purview of § 523(a)(15), and the burden is on Debtor to go forward.

The Court first examines the "ability to pay" component of this analysis. Schedule I shows Debtor and her spouse have combined monthly income of $2,650.94. Schedule J lists total monthly expenses of $2,580.50. Debtor acknowledged that her hourly wage had increased by $0.50 and her spouse's increased by $1.00. This increases their weekly take home income to $280 for Debtor, and $380 for her spouse. Thus, Debtor's current combined income is approximately $2,838 per month.

Debtor testified that an ignition interlock system is no longer an expense of $70.50 per month, and transportation costs have decreased from a reported $500 to $200 per month. She testified to a $100 increase in child support, and a new debt of $30 for homeowner's insurance. Debtor testified that the installment payments for her contact lenses have ended but she will need new lenses in approximately three months costing $220. Debtor alluded to expenses for repairs on the couple's 1972 mobile home. No evidence was presented, however, to ascertain the cost of those repairs. Thus, no allowance is made for these potential repairs. The Court concludes Debtor's current combined expenses are $2,358 per month. Debtors have combined disposable income of $480 per month.

Debtors include discretionary expenses in Schedule I, as follows: 1) cell phone for $55; 2) recreation, entertainment for $50; 3) personal care for $100; 4) cigarettes for $160; and 5) pet care for $30. This totals $395 per month for discretionary spending. In view of Debtor's substantial disposable income, no reason exists to analyze Debtor's discretionary spending at great length. Suffice it to state that under other circumstances, this amount of discretionary spending would be considered excessive. The Court concludes Debtor has the ability to pay the $3000 nonsupport credit card debt based on the availability of disposable income, a potential reduction in discretionary spending, and the resulting ability to make substantial and meaningful payments to Plaintiff.

### Application of § 523(a)(15)(B)

Under the alternative analysis in § 523(a)(15)(B), the Court considers whether excepting the debt from discharge will materially reduce Debtor's standard of living as compared to Plaintiff's. The Court will first consider the relative standards of living of the two parties and then evaluate the nature of the debt at issue.

The evidence establishes a monthly income for Plaintiff of $2,235 and monthly expenses totaling $1,800, leaving him with $435 of disposable income. He testified that his income will not change in the future. Debtor and her spouse's combined disposable income is $480 per month. Thus, the parties have approximately the same disposable income.

Plaintiff is living in a home with a market value of $79,000. Debtor lives in a mobile home with a market value of $1,000. However, as Plaintiff's home has a mortgage of $76,500, this leaves him little equity. Debtor has no dependents to support. The Court finds Debtor would not suffer a decrease in her standard of living "materially" below that of Plaintiff if the debt were not discharged.

Finally, the benefit to Debtor would not be greater than the detriment to Plaintiff in granting a discharge of the debt, particularly where as here, the nature of the debt is one where Plaintiff has incurred a loss of funds. This debt occurred due to Debtor's failure to pay the assumed credit card debt pursuant to the settlement agreement. Plaintiff was forced to "assume" this debt. This debt is in addition to other debt he assumed under the settlement agreement. The settlement agreement contains a hold harmless clause, compelling the parties to pay these respective assumed debts. The purpose of this clause was to protect each party from the very circumstances which have occurred in this case. To grant Debtor a discharge would require the Court to ignore this hold harmless clause and place a detriment upon Plaintiff disproportionate to the benefit to Debtor. Utilizing a benefit versus detriment balancing test, Debtor would not receive a benefit that outweighs the detriment to Plaintiff if the debt was discharged.

## CONCLUSIONS

Debtor has not met her burden to prove she does not have the ability to pay. Debtor's disposable income and reductions in her discretionary spending allow substantial and meaningful payments to Plaintiff. Additionally, Debtor's standard of living will not materially decrease below that of Plaintiff's. The detriment to Plaintiff, who was forced to take responsibility for the debt and incurred a loss of funds in doing so, outweighs the benefit to Debtor in discharging the debt.

**WHEREFORE,** the Complaint to Determine Dischargeability of Debt Pursuant to § 523(a)(15) of the Code is GRANTED.

**FURTHER,** Debtor has failed to prove by a preponderance of the evidence an inability to pay, or that the benefit to her of a discharge would be greater than the detriment to Plaintiff.

**FURTHER,** the nonsupport property settlement debt is nondischargeable pursuant to 11 U.S.C. § 523(a)(15) of the Code.