In re Clare A. WOODMAN, Debtor.

In re Steve A. Moulton and Mary L. Moulton, Debtors.

Nos. 02–20273, 02–20323.

United States Bankruptcy Court, D. Maine.

Jan. 17, 2003.

Barry E. Schklair, Portland, ME, for Clare A. Woodman.

Peter C. Fessenden, Brunswick, ME, trustee.

## MEMORANDUM OF DECISION

JAMES B. HAINES, Jr., Chief Judge.

Before me are two Chapter 13 plans. As to each, no party contends that

§ 1325's[1] confirmation requirements are unmet, with one exception. Evergreen Credit Union, an undersecured creditor in each case, argues that the debtors have not satisfied § 1325(b)(1)(B)'s mandate that they devote all their projected "disposable income" to their plans for at least three years.

On the stipulated record, Evergreen asserts that the debtors' monthly expenditures are excessive. More pointedly, it contends that the debtors' acknowledged monthly purchases of cigarettes ($136.00 per month for Woodman, $240.00 per month for the Moultons) are not "reasonably necessary" expenses within the meaning of § 1325(b)(2)(A). As a consequence, Evergreen urges that, in each case, those expenses must be removed from the equation, increasing disposable income and, consequently, increasing required monthly plan contributions. Doing so renders each plan unconfirmable in its current edition.[2]

Evergreen's first contention, that, categorically, no amount of tobacco expense may be subtracted from projected income to reach disposable income, presents a question of law. Its second contention, that, taking into account other discretionary expenditures, the debtors are not devoting all their projected disposable incomes to their plans, presents issues of fact.

As explained below, I conclude that tobacco expenses are not unreasonable *per se*, and that the debtors' respective plans satisfy § 1325(b)(1)'s disposable income test.

1. Unless otherwise indicated, all statutory sections cited are those of the Bankruptcy Reform Act of 1976, as amended ("Bankruptcy Code" or "Code") 11 U.S.C. § 101 *et seq*.

2. No other components of the debtors' disposable income calculation are at issue, except insofar as their other expenses might combine with tobacco expenditures to make either debtor's total expenses unreasonable.

## Facts [3]

Clare Woodman, a single mother with two children, filed her petition for Chapter 13 relief on February 27, 2002. She has monthly income, net of tax, social security, and insurance deductions, of $3,994.00. Her household expenses are $3,474.00, yielding $520.00 in "excess income." She acknowledges that cigarette purchases (approximately one pack a day) totaling $136.00 are included within her monthly expense figure. Her Chapter 13 plan provides for 58 monthly payments of $520.00.

Steve and Mary Moulton filed a joint petition for Chapter 13 relief on March 7, 2002. Steve Moulton takes home $2,717.00 a month after taxes, social security, and insurance deductions. Mary Moulton is disabled, as is the Moultons' 22–year–old son, who lives at home with his parents. The Moultons' monthly expenses are $2,450.00, including $240.00 for cigarettes (about 2 packs a day), leaving "excess income" of $267.00. They propose paying $265.00 a month into their Chapter 13 plan for 36 months. [4]

### Discussion

#### 1. The Statute

The starting point is the statute. Section 1325(b) provides:

> (b)(1) If the trustee or the holder of an allowed unsecured claim objects to the confirmation of the plan, then the court may not approve the plan unless, as of the effective date of the plan—

> (A) the value of the property to be distributed under the plan on account of such claim is not less than the amount of such claim; or

> (B) the plan provides that all of the debtor's projected disposable income to be received in the three-year period beginning on the date that the first payment is due under the plan will be applied to make payments under the plan.

> (2) For purposes of this subsection, "disposable income" means income which is received by the debtor and which is not reasonably necessary to be expended—

> (A) for the maintenance or support of the debtor or a dependent of the debtor, including charitable contributions (that meet the definition of "charitable contribution" under section 548(d)(3)) to a qualified religious or charitable entity or organization (as that term is defined in section 548(d)(4)) in an amount not to exceed 15 percent of the gross income of the debtor for the year in which the contributions are made; and

> (B) if the debtor is engaged in business, for the payment of expenditures necessary for the continuation, preservation, and operation of such business.

11 U.S.C. § 1325(b). Put more simply, that portion of projected income not reasonably necessary for the debtors' and their dependents' maintenance and support constitutes "disposable income" under § 1325(b).

---

3. The undisputed facts are reflected in the debtors' schedules I and J, Clare Woodman's affidavit dated August 26, 2002, and Steve Moulton's affidavit dated August 29, 2002. Evergreen's submissions expressly adopt the debtors' schedules and affidavits without contradiction or demand for cross-examination. As they become pertinent, additional facts (from the same sources) may be mentioned in the course of the discussion.

4. Apparently appreciating that approximation inheres in income and expense projections, Evergreen does not take issue with the $2.00 per month difference between projected available income and the Moultons' plan contribution.

## 2. The *Per Se* Argument

■ Evergreen asserts that "any expenditure by a [Chapter 13] debtor for cigarettes is not 'reasonably necessary' for support and maintenance." In other words, Evergreen argues that tobacco expenditures are unreasonable and unnecessary *as a matter of law.* It contends that such expenditures should not even qualify for scrutiny under an "excessive expense" standard: no level of cigarette expense should be acceptable. "Just as this Court would not tolerate a debtor's claim for allowance of a 'hobby' expense of $100.00 [or $240.00] consisting of incinerating a $100.00 bill [or $240.00 in currency] each month for no justifiable reason, the Court should not countenance the equivalent practice of cigarette smoking."

There are fundamental problems with branding one kind of expenditure or another as "never" reasonably necessary, as "always" coming from disposable income. To begin, such an approach can clothe subjective moral judgments with the force of law. If smoking is "bad" and therefore not "reasonably necessary," could not similar arguments be made in favor of ruling that any Chapter 13 debtor's expense, however minimal, for alcohol (even one can of beer), lottery tickets (a single one), cosmetics, sugared breakfast cereal, candy bars, or even, say, *scented* soap is never reasonably necessary, as well? Could not the same be said as to automobiles that seat more than (or fewer than), say, four adults, or achieve less than twenty-three-point-five miles-per-gallon?

When it comes to categorical declarations, the courts are divided about morally unambiguous conduct. The few cases that declare that certain expenses, for example pension loan repayments and pension contributions, are never "reasonably necessary" within the meaning of § 1325(b)(2) have not been accepted universally. *Compare, e.g., Anes v. Dehart (In re Anes)*, 195 F.3d 177, 180–81 (3d Cir.1999)("The Court of Appeals for the Sixth Circuit has held that repayment of amounts withdrawn from retirement accounts is not reasonably necessary for a debtor's maintenance or support.... We agree.") (citation omitted); *and Harshbarger v. Pees (In re Harshbarger)*, 66 F.3d 775, 777 (6th Cir.1995)("[pension loan repayments] may represent prudent financial planning, but [they are] not necessary for the 'maintenance or support' of the debtors."); *with New York Employees' Ret. Sys. v. Sapir (In re Taylor)*, 243 F.3d 124, 129 (2d Cir. 2001) (reasonable necessity of debtor's pension contributions and pension loan repayments must be considered case-by-case); *and In re Guild*, 269 B.R. 470, 474 (Bankr.D.Mass.2001)(collecting cases and rejecting *per se* rule for pension contributions and pension loan repayments).[5]

If debtors budgeted sums for, say, "stuffing money down a rat hole," a court could readily conclude that the expense should not be deducted from "projected income" to reach "disposable income." Such a pronouncement would hold for all conceivable Chapter 13 cases. Arguably, an unhealthful and seemingly wasteful activity like smoking should be treated the same.[6] But, for all its negative health effects, smoking remains a lawful activity.[7] To eliminate cigarette expenses from per-

---

**5.** It is generally agreed that, for purposes of § 1325(b)(2) analysis, there is no meaningful distinction between pension contributions and pension loan repayments. *See In re Guild*, 269 B.R. at 472–73.

**6.** But who is to say that the case is more compelling for Chapter 13 debtors than for the population at large?

**7.** Indeed, it is one of domestic commerce's most heavily taxed activities.

missible expenditures in the disposable income equation (as a matter of law) would effectively outlaw smoking for all Chapter 13 debtors. That argument is better directed at Congress than at the court. If Congress chooses to enact such a prohibition, it may. I will not do it by judicial fiat for debtors in this district.

■ The statute speaks of "reasonably necessary" expenditures. One would be hard-pressed to fashion a more case specific standard. *In re Davis,* 241 B.R. 704, 709 (Bankr.D.Mont.1999). Better to consult each case's unique facts and circumstances, to consider each Chapter 13 plan on its individual merits, than to attempt a generalized declaration, an iron-clad rule for all cases. The reasonableness and necessity of expenses is a factual matter, to be determined "in the context of individual debtors and their dependents." 2 Keith M. Lundin *Chapter 13 Bankruptcy* § 165.1, at 165–1 (3d ed.2000)(hereafter *"Lundin"*).

Section 1325(b) loses nothing in case-by-case application. Expenses that are not "reasonably necessary" to support a debtor and his or her family will not be permitted to reduce disposable income. But there will always be room to consider the unusual case. I will, therefore, consider Woodman's and the Moultons' tobacco expenses in the context of their budgets and their plans.

### 3. Assessing Reasonableness and Necessity

#### a. Burden of Proof

To determine whether a debtor's smoking expenses should or should not decrease disposable income dedicated to a Chapter 13 plan requires viewing those expenditures in context with other regular expenses. Although Evergreen acknowledges that the debtors' non-smoking ex-

penses are reasonable, it considers that funding smoking habits, taken together with other discretionary spending, renders the debtors' expense "packages" unreasonably high, precluding confirmation.

■ It stands emphasizing that Evergreen's challenge raises a questions of fact: that is, are the debtors' smoking expenses reasonably necessary in their respective circumstances. 2 *id.* As such, the burden of proof is important. The authorities are not unanimous, but I agree with the view that:

> The reported decisions are unnecessarily divided on the burdens of proof at confirmation of a Chapter 13 plan. A strong majority of courts appropriately allocate to the debtor the burden of proving the conditions for confirmation in §§ 1322 and 1325(a). A few reported decisions conclude that a creditor objecting to confirmation has the burden to prove the failure of a condition for confirmation. The most common formulation of the burden of proof with respect to the disposable income test for confirmation in § 1325(b) is that the objecting party bears the initial burden of going forward with evidence in support of the objection, but the ultimate burden of persuasion rests with the debtor to prove all the conditions for confirmation.

3 *id.* § 217.1, at 217–1 to –3 (footnotes omitted). Mindful of the burden each party bears in this § 1325(b) dispute, we cast a keener eye on the debtor-specific circumstances.

#### a. Woodman

Clare Woodman's gross income is $6,257.00 per month. Payroll deductions reduce her monthly take-home pay to $3,779.00. Other funds brings her projected monthly income to $3994.00. Her monthly expenses include the following:

| | |
|---|---|
| Housing (not including taxes and insurance) | $ 780.00 |
| Second mortgage | 280.00 |
| Electricity and heating | 215.00 |
| Cable TV/Internet | 70.00 |
| Telephone | 50.00 |
| Home maintenance | 35.00 |
| Medical/dental | 366.00 |
| Food | 387.00 |
| Clothing | 175.00 |
| Laundry/dry cleaning | 10.00 |
| Transportation | 230.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | 100.00 |
| Insurance (auto, home, life) | 173.00 |
| Real estate taxes | 183.00 |
| Other (lunches, Elan account—$200.00, haircuts allowance, cigarettes) | 420.00 |
| | |
| Total monthly expenses | $3,474.00 |

Ms. Woodman's uncontroverted affidavit sheds additional light on her budget. Her minor son attends the Elan School, a private, resident institution. Because Ms. Woodman is employed there, her son attends without tuition, but she must fund an expense account at $200.00 per month. Ms. Woodman and her minor daughter "each get a haircut every other month at about $20 per cut" and she gives her daughter $15.00 a week (approximated as $65.00 a month) as an allowance. Ms. Woodman's monthly medical expenses ($424.00) are documented and uncontested.[8] She smokes about one pack of cigarettes ($4.50) a day, giving rise to a monthly tobacco expense of $136.00. That expense amounts to 2.1% of her projected income; 3.4% of her disposable income.

### b. Moulton

The Moultons' monthly expenses include the following:

| | |
|---|---|
| Housing (including taxes and insurance) | $ 724.00 |
| Electricity and heating | 235.00 |
| Cable TV | 38.00 |
| Telephone | 50.00 |
| Home maintenance | 50.00 |
| Medical/dental | 50.00 |
| Food | 541.00 |
| Clothing | 90.00 |
| Transportation (not including car payment) | 150.00 |
| Recreation, clubs and entertainment, newspapers, magazines, etc. | 125.00 |
| Auto insurance | 124.00 |
| Haircuts, gifts, cigarettes | 273.00 |
| | |
| Total monthly expenses | $2,450.00 |

Steve Moulton earns $3,718.00 per month (including $858.00 in overtime pay). Payroll deductions reduce his take-home pay to $2,717.00. The family has no other income. The Moultons' expenses are illuminated by Steve Moulton's uncontroverted affidavit, which explains that the budgeted expenses for haircuts, gifts and cigarettes include "two packs of cigarettes per day at an average cost of $4.00 per pack, which equals $240.00; gifts are approximately $100.00 per year or approximately $8.00 per month; and the balance in [sic] haircuts for the family." Cigarette expenses amount to approximately 6.45% of his total projected income; about 8.8% of his disposable income.

Mr. Moulton states that the $125.00 recreational expense consists of "occasional meals out (average twice a month) at $35.00 per meal; take out pizza; newspapers; magazines; video rentals; and assorted small recreational expenses." Mrs. Moulton earns no income and the couple's adult son lives at home. Mr. Moulton explains: "My son, Cameron does not work. He has a mild case of Down [sic] Syndrome. He has not graduated high

---

**8.** Ms. Woodman's medical expenses do not, to the untrained eye, appear to be the result of cigarette smoking. In any event, no contention has been made that they are unreasonable in any respect.

school and has been unable to hold a job for more than one week."

### c. The Standard

■ Stated broadly, the § 1325(b) standard requires that expenses provide the means to live "adequately," but not "first class." 5 William L. Norton, Jr. *Norton Bankruptcy Law and Practice 2d* § 122:10, at 122–101 (1997)(hereafter *"Norton"*); 2 *Lundin* § 165.1, at 165–5. The standard is inexact, at best. Determining whether expenses are reasonably necessary can drag the bankruptcy court into an analysis that examines, and approves or disapproves, the debtor's lifestyle's details. 5 *Norton* § 122:10, at 122–101; 2 *Lundin* § 165.1, at 165–5.

The Code provides at least one point of reference. Although some authorities refer to it for guidance as to what "reasonably necessary" means, I find it of no particular help. Section 1325's "disposable income" test was added to Chapter 13 by 1984 amendments. The same amendments added § 523(a)(2)(C), the Chapter 7 nondischargeability presumption for purchases of "luxury goods or services" immediately preceding a bankruptcy filing. Luxury goods or services "do not include goods or services reasonably acquired for the support or maintenance of the debtor or a dependent of the debtor." 11 U.S.C. § 523(a)(2)(C). Section 1325(b)(2) defines "disposable income" as "income which is received by the debtor and which is not reasonably necessary to be expended" for the support of the debtor and his or her dependents (or for the "continuation, preservation, and operation" of a debtor-owned business). It follows that expenditures for luxury goods and services cannot be factored in the process of reducing "received income" to "disposable income." 8 Lawrence P. King *Collier on Bankruptcy* ¶ 1325.08[4][b][ii], at 1325–54 (15th ed. rev. 2002) (hereafter *"Collier"*).

The analysis mines what scant legislative history and statutory context is available, but it hardly illuminates the landscape. The "definition" it provides is circular, not substantive: Luxury goods and services are those that are not reasonably necessary for support; therefore expenses that are not reasonably necessary are expenses for luxury goods and services. It invites decision making by label, but, by itself, contributes only marginally to disciplined analysis.[9]

■ Notwithstanding the analytical shortcomings, I agree with the conclusions the leading commentators have drawn:

This definition [in § 523(a)(2)(C)] and the vague reference in the legislative history to living levels, which tend to be concerned with average families, both suggest that *the primary intent of the definition of disposable income is to prevent large expenditures by chapter 13 debtors on luxury goods and services which cause holders of unsecured claims to receive reduced payments.*

---

9. Related analysis appears in cases applying § 523(a)(15), where the debtor's "ability to pay" is a statutory prerequisite to a nondischargeability determination for divorce-sourced property division obligations. See, for example, *Dressler v. Dressler (In re Dressler)*, 194 B.R. 290, 304–05 (Bankr.D.R.I. 1996), and § 707(b), where a debtor's ability to fund a Chapter 13 plan to pay off his or her obligations is a factor in determining whether a Chapter 7 case should be dismissed for "substantial abuse." *E.g., In re Mastromarino*, 197 B.R. 171, 177–78 (Bankr.D.Me.1996) (section 707(b) analysis). For the most part, the analysis employed in such cases is derivative of Chapter 13 jurisprudence and, consequently, provides scant additional insight into § 1325(b)(2)'s application. A recent First Circuit case treating § 707(b), *First USA v. Lamanna (In re Lamanna)*, 153 F.3d 1 (1st Cir.1998), is an exception and will be discussed *infra*.

Hence, a court determining the debtor's disposable income is not expected to, and should not, mandate drastic changes in the debtor's lifestyle to fit some preconceived norm for chapter 13 debtors. *The debtor's expenses should be scrutinized only for luxuries that are not enjoyed by an average American family.*

8 *id.* (emphasis added) (footnotes omitted). Judge Lundin reaches a like conclusion:

If there is a general rule, reasonably necessary means "adequate" but not "first-class." Luxuries are excluded. . . .

Some reported decisions conclude that the disposable income test requires the bankruptcy court to reduce the debtor's style of living. As one court explained, "[R]easonably necessary ... [means] sufficient to sustain basic needs not related to ... former status in society or the lifestyle to which [the debtor] is accustomed." Chapter 13 debtors "should not be allowed to continue in the lifestyle that drove them to file bankruptcy." One court observed somewhat more gently that *bankruptcy judges should not require Chapter 13 debtors to alter their lifestyles to comply with § 1325(b) when there is no "obvious indulgence in luxuries."*

2 *Lundin* § 165.1, at 165–5 to –6 (emphasis added)(footnotes omitted). *See also* 5 *Norton* § 122:10, at 122–101 ("'Luxury' items and expenses that the court considers unnecessary will be denied as expenses and included in the debtor's projected disposable income.").

■ Such conclusions leave the court with only a bit more than a "Gestalt test" for excessive expenses. Maybe that is for the best (or at least the better). Although "objectifying" the disposable income test

would contribute to certainty, a strict formula, allocating so many dollars or a given percentage of available income to permissible discretionary expenses each month, would hold significant potential for unfairness and could defeat informed, case-by-case analysis. Dollar limitations would quickly be outdated. And a percentage test could penalize low income debtors unfairly. Thus, if the trustee or a creditor comes forward with evidence that the debtor is not committing all available projected disposable income to the plan as required by § 1325(b)(1), the court, without the aid of arbitrary, bright line formulae, must scrutinize the debtor's budget in view of the debtor's particular circumstances, and use its best judgment to determine whether expenses other than those that are "reasonably necessary" have been improperly included in the disposable income calculus. *See In re Taylor,* 243 F.3d at 129 (the Code does not define "reasonably necessary," bankruptcy court exercises its discretion based on the "circumstances confronting the debtor").

#### d. Applying the Standard

■ In the cases at bar, it is a close question whether Evergreen has met its initial burden of producing evidence that the debtors are not proposing to devote all their projected disposable income to their plans.

In Ms. Woodman's case, her budget reveals a dearth of discretionary spending that could be characterized as unnecessary or unreasonable. Indeed, aside from the line items for cable TV/internet ($70.00) and recreation ($100.00), neither of which has drawn Evergreen's fire, there are none besides her cigarettes.[10] In the Moultons'

---

10. Evergreen does not contend that the $200.00 per month expenditure associated with her son's private schooling is unreason-able. Neither does it urge that the modest allowance Ms. Woodman provides her daughter is unreasonable.

case, although tobacco expenses represent a greater percentage of their substantially lower household income, Evergreen can point to no other expenses it considers inappropriate to their circumstance.[11] Thus, in both cases, Evergreen's position is not far removed from the *per se* argument rejected above.

The cases Evergreen cites in support of its contention that the debtors' cigarette expenses are not reasonably necessary are readily distinguishable. Each of those cases mentions cigarette expenses in determining that the debtors had more disposable income than they contended *for the purposes under consideration,* but in none was that expense the determining factor, as Evergreen seeks to make it here. *See In re Smith,* 1995 WL 20345 (Bankr.D.Idaho Jan.11, 1995)(§ 707(b) case; debtor's calculation of disposable income included "lavish expenses," including support of two adult sons living at home); *In re Johnson,* 115 B.R. 159, 164 (Bankr. S.D.Ill.1990)(§ 707(b) case; court found that debtors could wring an extra $100.00 per month out of monthly expenses totaling $1,320.00 for combination of food, tobacco, and "household supplies"); *In re Peluso,* 72 B.R. 732, 738 (Bankr.N.D.N.Y. 1987)(§ 707(b) case; cigarette expense coupled with "excessive expenses" including support of emancipated, employed son); *In re Hudson,* 64 B.R. 73, 75 (Bankr. N.D.Ohio 1986)(§ 707(b) case; debtors' amended schedules were not credible and

several expense items, including tobacco, were excessive). *Whitlach v. Allgor (In re Allgor),* 276 B.R. 221 (Bankr.N.D.Iowa 2002), the most favorable case cited by Evergreen, is a § 523(a)(15) case determining that the debtor had sufficient disposable income to satisfy § 523(a)(15)(A)'s "ability to pay" test. There, cigarette expenses of $160.00 per month, combined with other "discretionary" expenses, led the court to conclude that the debtor's discretionary spending was excessive and, when combined with available disposable income of $480.00 per month, that the debtor could afford to pay a single, divorce-based debt of $3,000.00 over time. *Id.* at 225–26.

Even assuming the questionable proposition that Evergreen has produced sufficient evidence to require the debtors to establish the reasonableness of their expenses by a preponderance of the evidence, they have done so. The spending priorities each has agreed to live with for the duration of their Chapter 13 plan are reasonable. Ms. Woodman's budget provides no money to fund vacations, retirement, savings, or charity. She has no car payment. The Moultons, who also have no car payment, budget nothing for savings, vacation, retirement, or charity. Mr. Moulton works overtime to make ends meet. Neither family lives immodestly, let alone lavishly. Their expenses, including their tobacco expenses, are not unreasonable.[12] I find that their plans meet

---

**11.** Evergreen accepts the necessity that the Moultons' son reside with them and be provided for as part of their household; it does not contend that Mrs. Moulton should work outside the home.

**12.** One point made by debtors' counsel at oral argument is worth comment. He asserted that if the debtors' plans were not confirmed, they might reassess their spending priorities, adding expenses such as financed car purchases to their budgets. The result could well

reduce their disposable income. The First Circuit's decision in *In re Lamanna, supra,* discredits that argument. *Lamanna* was a § 707(b) case in which the bankruptcy court determined that the debtor's proceeding in Chapter 7 would be a "substantial abuse" because he had disposable income sufficient to repay his debts. *In re Lamanna,* 153 F.3d at 3. The debtor argued that the only reason he had sufficient disposable income was because his monthly expenses were "artificially low," due to his residing with his parents.

§ 1325's confirmation requirements, including those of § 1325(b).

### Conclusion

For the reasons set forth above, Evergreen's objections to the debtors' plans are overruled. A separate order consistent with this opinion will enter forthwith.

The court observed that his circumstances were "actual," not "artificial," and affirmed the bankruptcy court. The lesson is that for § 707(b)'s purposes, and by extension for § 1325(b)(2)'s purposes, the court must take debtors as it finds them, applying the appropriate test based on existing and foreseeable facts, rather than on an hypothetical or "objective" model. *Id.* at 5. If a debtor's circumstances change, he or she may seek appropriate relief at that time. *Id.; see also* 11 U.S.C. § 1329.