In re LOS GATOS LODGE INC., Debtor.

**Mohamed Poonja, Appellant,**

v.

**Alleghany Properties, Appellee.**

No. 00–16916.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 6, 2001.

Filed Jan. 17, 2002.

Seymour J. Abrahams, San Jose, California, for the appellant.

Jeffrey B. Gardner, Saxon, Barry, Gardner & Kincannon, APC, Newport Beach, California, for the appellee.

Before: MELVIN BRUNETTI, ANDREW J. KLEINFELD and SIDNEY R. THOMAS, Circuit Judges.

## OPINION

THOMAS, Circuit Judge:

In this appeal, we consider whether a bankruptcy trustee may surcharge a creditor for necessary expenses in preserving property pursuant to 11 U.S.C. § 506(c) after the creditor's secured claim has been disallowed. We conclude that such a surcharge is improper and affirm the judgment of the district court.

## I

Dr. Norman E. and Jean P. McFate owned and operated the Los Gatos Lodge and the real property on which it was located. The McFates borrowed $6.25 million from Sacramento Savings Bank ("Sacramento Savings"). The loan was secured by: (1) a deed of trust against the real property on which the Los Gatos Lodge was located; (2) an assignment of the rents, issues, and profits of the real property; and (3) a security agreement that granted Sacramento Savings "a security interest in certain furniture, fixtures, equipment, appliances and replacement parts located at the Los Gatos Lodge."

The McFates subsequently transferred ownership of the real property to a family trust of which they were the trustees. They also transferred ownership of the Los Gatos Lodge building and business, including related personal property, to Los Gatos Lodge, Inc., a corporation owned by them or their family trust. The family trust leased the real property to Los Gatos Lodge, Inc.

The McFates defaulted on the loan from Sacramento Savings. Both the McFates and Los Gatos Lodge, Inc., filed Chapter 11 petitions. However, the cases were not consolidated. Appellant Mohamed Poonja ("the trustee") was appointed as trustee in Los Gatos Lodge, Inc.'s case.

In Los Gatos Lodge, Inc.'s case, Sacramento Savings filed a proof of secured claim and an amended proof of secured claim. These proofs of claim referenced Sacramento Savings' security interest in the personal property located at the Los Gatos Lodge. They also stated that the consideration for the claimed debt consisted of "[a]ny claim of ownership by the

Debtor with respect to" the real property at issue and the loan documents.

Sacramento Savings then sought relief from the automatic stay in order to foreclose on its collateral. Pursuant to a stipulation of the parties, the bankruptcy court granted the request in June 1993, but with the proviso that the foreclosure sale could occur no sooner than September 2, 1993. From June 1993 until six days after the foreclosure sale, the trustee operated and managed the Los Gatos Lodge. He oversaw matters such as personnel supervision, issues with the National Labor Relations Board, accounting, termite fumigation, and marketing. On October 6, 1993, the foreclosure sale occurred at which Sacramento Savings bid $200,000 for the personal property in the Los Gatos Lodge.

Both bankruptcy cases were converted from Chapter 11 to Chapter 7 in late 1993, and the respective trustees were reappointed to administer the Chapter 7 estates. Throughout this time and thereafter, the trustee and Sacramento Savings disputed between themselves what effect, if any, the McFates' transfer of ownership of the Los Gatos Lodge and the personal property within it to Los Gatos Lodge, Inc. had on the security agreement with Sacramento Savings. The trustee asserted that Los Gatos Lodge, Inc. had replaced much of the personal property after becoming the owner and that Sacramento Savings had never perfected a security interest in this replacement property. Sacramento Savings took the position that it had a valid security interest in all personal property described by the security agreement, regardless of whether it was owned by Los Gatos Lodge, Inc. or the McFates or had been replaced by Los Gatos Lodge, Inc.

In May 1994, the trustee and Sacramento Savings negotiated a settlement to this dispute. Pursuant to this settlement, Sacramento Savings purchased from the estate all of the items potentially subject to the security agreement, described as:

> The bankruptcy estate's interest, if any, in all of the other personal property of Debtor located at the Lodge or in the Debtor's or Trustee's possession, custody or control, including, but not limited to, all furniture, fixtures, appliances, equipment....

Sacramento Savings also bought other items that it conceded were not subject to the security agreement, including a van, the Los Gatos Lodge's liquor license, its inventory and cash on hand, and its business name and goodwill. In total, Sacramento Savings paid $138,054.39, of which $80,000 was allocated to the personal property. Neither party made any admissions of liability, and the settlement expressly preserved the trustee's right to seek to surcharge collateral under 11 U.S.C. § 506(c), as well as all of Sacramento Savings' defenses to any § 506(c) action.

The trustee filed a motion seeking approval from the bankruptcy court for this settlement. In the motion, the trustee explained the parties' positions with respect to the personal property at the Los Gatos Lodge, and stated that "[t]he facts raise many difficult questions of law concerning the security interest of [Sacramento Savings]." He further stated that he sought approval of the settlement so that he "c[ould] save the substantial attorneys fees and costs that will be necessary for litigation regarding ownership of and security interests in various assets of the debtor." The bankruptcy court approved the settlement.

Approximately two years after the settlement had been approved, the trustee filed an objection to Sacramento Savings' proofs of claim, stating that "[t]he basis for the objection is that the claims were released by a stipulation." Attached to the objection was a letter from counsel for

Alleghany Properties, Inc. ("Alleghany"), which, as successor-in-interest to Sacramento Savings, was now the concerned party. The letter states that Alleghany "confirms that Sacramento Savings released its Proofs of Claim against the bankruptcy estate." Upon receiving the objection, the bankruptcy court disallowed the claims in their entirety on September 19, 1996.

In March 1999, the trustee filed a motion pursuant to 11 U.S.C. § 506(c), which the bankruptcy court converted into an adversary proceeding, to surcharge collateral and recover the value of his services for the four months that he operated the Los Gatos Lodge. He filed an identical motion in both Los Gatos Lodge, Inc.'s bankruptcy and the McFates' individual bankruptcy.

The bankruptcy court issued a written decision in September 1999, ruling in favor of the trustee and awarding him $80,861.37. It denied without prejudice his request to recover the attorneys' fees incurred in bringing the motion.

■■■ Alleghany then appealed to the district court, which reversed, holding that Sacramento Savings had not held an "allowed secured claim" as required under § 506. The trustee now appeals.[1] "We review de novo the decision of a district court which has acted as an appellate court in reviewing a bankruptcy court's decision on appeal." *Lundell v. Anchor Constr. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir.2000). We review the bankruptcy court's factual findings for clear error and its conclusions of law de novo. *Id.*

## II

Under the Bankruptcy Code, a bankruptcy trustee may recover from the holder of an allowed secured claim reasonable and necessary expenses incurred by the trustee in the preservation of the secured collateral. The relevant section, 11 U.S.C. § 506(c), provides:

> The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Section 506(c) had its origins in the equitable principle that where a court has custody of property, administration and preservation expenses are a dominant charge against the property. *Hartford Underwriters Ins. Co. v. Union Planters Bank, N.A.,* 530 U.S. 1, 9, 120 S.Ct. 1942, 147 L.Ed.2d 1 (2000).

■■■ To recover under § 506(c), a trustee must establish that the claim associated with the relevant collateral is both "allowed" and "secured." *Bear v. Coben (In re Golden Plan of Cal., Inc.),* 829 F.2d 705, 712 (9th Cir.1986). Further, the trustee must establish the extent to which the claim is to be treated as secured by establishing the value of the collateral. *See Assocs. Commercial Corp. v. Rash,* 520 U.S. 953, 960, 117 S.Ct. 1879, 138 L.Ed.2d 148 (1997); *see also* 4 Lawrence P. King, *Collier on Bankruptcy* ¶ 506.03 (15th ed.2001). Finally, the costs and expenses for which recovery is sought must be incurred for the benefit of the secured creditor and be reasonable and necessary. *Cent. Bank of Mont. v. Cascade Hydraulics & Util. Serv., Inc. (In re Cascade Hydraulics & Util. Serv., Inc.),* 815 F.2d 546, 548 (9th Cir.1987).

■■■ When the trustee initiated the § 506(c) proceeding, there was no "allowed secured claim" that pertained to the property because the bankruptcy court had

---

**1.** He appeals only from the district court's ruling in Los Gatos Lodge, Inc.'s case.

formally disallowed the secured claim at the trustee's request. That, at first blush, would seem fatal to a § 506(c) recovery. However, the trustee argues that the secured claim was "deemed allowed" pursuant to 11 U.S.C. § 502(a) at the time the preservation expenses were incurred; thus, a § 506(c) recovery would be proper.

Section 502(a) provides that "[a] claim of interest, proof of which is filed under section 501 of this title, is deemed allowed, unless a party in interest . . . objects." As we explained in *Lundell*:

> Section 501 of Title 11 of the United States Code allows creditors a means to present their claims against a debtor to the bankruptcy court by filing a proof of claim. *See* 11 U.S.C. § 501. Whether such a claim for which a proper proof has been filed is "allowable" is a matter for determination pursuant to 11 U.S.C. § 502 and the procedural rules governing the bankruptcy courts. These rules and our case law have put in a place a general procedure to allocate the burdens of proof and persuasion in determining whether a claim is allowable.

> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes *"prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). *See also* Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. *See* Adv. Comm. Notes to Fed. R. Bankr.P. 9014.

223 F.3d at 1039.

■ Thus, although a claim is "deemed allowed" if no party in interest objects, such a determination is not final until the conclusion of the case. Proofs of claims themselves are not final judgments giving rise to res judicata, but the bankruptcy court's allowance or disallowance of a proof of claim is a final judgment. *Siegel v. Fed. Home Loan Mortgage Corp.*, 143 F.3d 525, 529–30 (9th Cir.1998).

Thus, if the trustee had initiated the § 506(c) proceeding before the claim had been disallowed, as is the usual practice, then he could have legitimately alleged that the claim was an "allowed secured claim" under the section. However, he first successfully obtained a disallowance of the claim, then filed an action alleging that it was an "allowed secured claim" under § 506(c). At that point, the bankruptcy court's order disallowing the claim was res judicata as to whether the claim was "allowed" or "disallowed." *Siegel*, 143 F.3d at 530. In short, in order to be eligible for a § 506(c) surcharge, the claim must be an "allowed secured claim" at the time the § 506(c) action is filed. Because it was not in this instance, the trustee cannot recover under § 506(c) as a matter of law.

Given that this conclusion is determinative of the outcome, we need not address the other objections raised by the parties.

The judgment of the district court is affirmed.

**AFFIRMED.**