In re William E. **FULBRIGHT**, and April D. Fulbright, Debtors.

**William E. Fulbright, Plaintiff,**

v.

**United States Department of Education, Defendant.**

Bankruptcy No. 03–62471–7.
Adversary No. 04/00021.

United States Bankruptcy Court, D. Montana.

Jan. 7, 2005.

William E. Fulbright, pro se.

April D. Fulbright, pro se.

George F. Darragh, Jr., U.S. Attorney's Office, Great Falls, MT, for United States Department of Education.

## ORDER

RALPH KIRSCHER, Chief Judge.

Plaintiff/Debtor William E. Fulbright ("Fulbright") commenced this adversary proceeding on February 20, 2004, seeking a determination that excepting student loan debt owing to the Defendant United States Department of Education ("DOE") from his discharge will impose an undue hardship on the Debtor and his dependents under 11 U.S.C. § 523(a)(8). DOE filed an answer admitting the Debtor is indebted to DOE for $88,651.94 in student loans, but denying that Fulbright's student loan debts are dischargeable on grounds of undue hardship, and denying that Fulbright has met the "good faith" test because he failed to utilize various income-sensitive repayment options available based on Debtor's ability to repay. After due notice, trial of this cause was held at Missoula on November 4, 2004. Fulbright, who is an attorney admitted to practice in the State of Montana, appeared *in propria persona* and testified. DOE was represented by assistant United States Attorney George F. Darragh, Jr. ("Darragh"). Plaintiff's Exhibits ("Ex.") 1, 2, 3, 4, and 5, and DOE's Ex. A, B, and C, all were admitted into evidence. In addition, by Stipulation of the parties a "Declaration of Lynda D. Faatalale" ("Faatalale's Decl."), who is a loan analyst for the DOE, was admitted into evidence. At the conclusion of the parties' cases-in-chief the Court closed the record and granted the parties ten (10) days to file simultaneous briefs, after which this matter would be taken under advisement. The parties' briefs have been filed and reviewed by the Court, together with the record and applicable law governing undue hardship under § 523(a)(8). This matter is ready for decision.

This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157. This is a core proceeding to determine to determine dischargeability of particular debts under 28 U.S.C. § 157(b)(2)(I). This Order contains the Court's findings of fact and conclusions of law pursuant to F.R.B.P. 7052. At issue is whether excepting Fulbright's student loan debt from his discharge will impose an undue hardship on the Debtor or his dependents under § 523(a)(8), when Debtors tithe $430 per month from their income in charitable contributions to their church, which contributions are encouraged but voluntary, and not a requirement for membership in the church. For the reasons set forth below, Judgment will be entered for DOE dismissing Fulbright's complaint.

## FACTS

Fulbright is 42 years old and lives with his spouse and co-Debtor April D. Ful-

bright ("April") and five of their six children[1] in Stevensville, Montana. Fulbright has worked as deputy county attorney for Ravalli County, Montana, for the past 2 years, and before that worked in private practice, and as a public defender, since graduating from law school. April is employed driving a school bus for the Stevensville School District.

Debtors live in a house at 259 Higgins Lane in Stevensville which they purchased by contract for deed on September 14, 1999. Ex. B, pp. 122–125. Fulbright testified that the contract for deed has been paid off using loans from the Debtors' parents to pay off the amount due the sellers, the Sinclairs. He testified that Debtors continue to pay their parents the sum of approximately $1,158 per month, depending on the interest the parents have to pay on money they borrowed to pay off Debtors' contract for deed. Debtors have no written agreement with their parents, only a "gentlemen's agreement". Fulbright testified that Debtors intend to pay off their parents when they qualify for a mortgage loan. An Internal Revenue Service ("IRS") lien against the house was recorded in the year 2000, for taxes assessed in the total amount of $25,915.43. Ex. 5.

Fulbright's average monthly expenses total $3,714[2], including his $1,158 mortgage payment, and a $430 monthly tithe to his church. Fulbright testified that tithing is voluntary but encouraged as a "step of faith", and is an integral part of his religious beliefs. Fulbright testified that his expenses have increased since July of 2004. Fulbright's gross pay as of July 2004 is $3,810.02, and net pay after taxes, retirement and insurance is $2,947.90[3].

The parties agree that Fulbright is indebted to the DOE for consolidated guaranteed student loans, but dispute the amount of the DOE debt due and owing. Fulbright testified that the balance due claimed by DOE is $89,566.38, as on Ex. A. Ex. 2 and 3 show different amounts due[4]. Fulbright testified that he disputes the manner in which the student loan debt grew from $35,000 to the total shown on Ex. A of $89,557.49, which included capitalization of interest.

Fulbright testified that he made payments on his student loans and utilized available deferments for the first 4 years he was out of law school. Then in October 1988, he consolidated his 3 student loans. Faatalale's Declaration describes the consolidation promissory note on the fourth page and attachment A in the amount of $35,155.02 in 1989. Fulbright testified he received a coupon book calling for payments of $297 per month, some of which he made, alternating payments with deferments. The loan was guaranteed by United Student Aid Funds and reimbursed by DOE. Faatalale's Decl., 4th page[5], ¶ 11.

1. The oldest child, Mara, is a full time student at Brigham Young University in Provo, Utah.

2. The approved Pretrial Order, p. 4, and Plaintiff's pretrial memorandum filed October 29, 2004 (docket # 17), at p. 3, itemize Debtors average expenses as $1,158 mortgage, $244 utilities, $60 phone, $86 cell phone, $425 transportation, $236 auto insurance, $600 food, $216 installment payment on a loan secured by their 1994 pickup, $430 tithing, $18 dry cleaning, $37 clothing, $126 property taxes, $42 homeowners' insurance, and $36 recreation (Gymkhana), for a total of $3,714.

3. The $430 tithe is computed at ten percent (10%) of Fulbright's and April's combined incomes.

4. Ex. 2, a statement from ACS Inc., states a total balance of $106,527.51 as of May 22, 2003. Ex. 3 states the amount due as $92,154.08 as of July 26, 2001.

5. Faatalale's Declaration does not have numbered pages.

A default was declared on November 26, 1992. Ex. A. Fulbright testified that he had left a law firm where he was employed as an associate, and had no income to make his payments. He applied for a deferment but was denied. Fulbright's student loans went to collection in 1995 and 1996. Fulbright testified that he was earning about $11,000 per year and spending all his money on rent and food. In 1996, Fulbright testified, the balance due stated in a collection letter jumped to $67,000 from $35,000, including an $11,000 increase in the amount due in a single month. Fulbright testified that he disagreed with the capitalization of interest by DOE, and that DOE refused to negotiate with him for income contingent repayment plans unless he accepted the increased amount, without explaining its authority to capitalize unpaid interest.

Faatalale's Declaration at pp. 3–5 explains the system in which a student loan lender which is unable to collect student loans from a borrower may request payment on the loan from the guaranty agency, which in turn if unable to collect may assign the loan to the DOE. Fulbright's lender requested payment from the guaranty agency on his defaulted loans in the amount of $78,775.65, which included $46,942.86 or principal and $31,832.79 in accrued interest, and the guaranty agency capitalized the interest. Faatalale's Decl., pp. 4–5, ¶ 11.

The guaranty agency received and credited Fulbright's account with payments totaling $2,267.00 prior to assigning the debt to DOE. Faatalale's Decl., 5th page, ¶ 12. Fulbright did not make any further pay-

ments after DOE took assignment of his loan, but DOE received $1,672.47 from the Chapter 13 [6] Trustee. Faatalale's Decl., p. 5, ¶ 13. Interest accrues on a daily rate of $11.61. Faatalale's Decl., p. 5, ¶ 16. Faatalale's Decl., pp. 4–5, ¶ 11.

Fulbright testified that the last collection agency which contacted him offered him participation in the William D. Ford Federal Direct Loan Program ("William D. Ford Program"), but only if he would accept DOE's claimed amount of debt, including the accrued interest. Fulbright refused because DOE and the collection agencies refused to address his issue regarding capitalization of interest, and he continued for 8 years to dispute DOE's authority to capitalize the interest. Fulbright testified that he does not dispute the math on Ex. A adding the principal and interest for a total of $89,557.49, only the interest component. Fulbright testified that payment of his student loan debt over 10 years and 120 payments would require a monthly payment of $950.44, which he cannot pay. He further testified that DOE wants him to make payments for 25 years, at which point he will be 68 years old. The William D. Ford Program and remains available to Fulbright, providing him with 4 possible income contingent repayment plans. Faatalale's Decl., 8th page, ¶ 21 and Attachment I.

The Debtors filed a voluntary Chapter 7 petition on July 28, 2003, and filed their Schedules and Statement of Affairs on August 12, 2003. Schedule A lists Debtors' real property at a value of $200,000 [7]. Debtors listed $474,370 in unsecured nonpriority claims on Schedule F, including stu-

---

6. Faatalale's reference to Chapter 13 is wrong. Debtors filed a Chapter 7 bankruptcy case, and the Trustee's final report filed October 15, 2004, shows the $1,672.47 paid to DOE.

7. The $162,257.00 claim of the Sinclairs listed on Schedule D has been paid off with the loans from Debtors' payments. Other than the IRS's tax lien, the record shows that Debtors' home is unencumbered by any perfected security interests.

dent loan debt owed to DOE in the amount of $107,145 described as "1988 Student Loan" and disputed. DOE filed Proof of Claim No. 6 on March 1, 2004, in the amount of $85,992.70. No objection was filed to the allowance of DOE's Proof of Claim, and therefore DOE's Proof of Claim No. 6 is deemed allowed and prima facie evidence of the validity and amount of DOE's claim. F.R.B.P. 3001(f). *See Lundell v. Anchor Constr. Specialists, Inc. (In re Lundell)*, 223 F.3d 1035, 1039–40 (9th Cir.2000).

Fulbright filed his complaint to determine dischargeability of debt on February 20, 2004. The Trustee filed a Final Report, and a Final Decree was entered closing Debtors' Chapter 7 case on November 12, 2004.

## DISCUSSION

The discharge of student loan obligations is governed by 11 U.S.C. § 523(a)(8), which provides in relevant part:

> (a) A discharge under section 727, 1141, 1228(a) 1228(b), or 1328(b) of this title does not discharge an individual debtor from any debt—
>
> > (8) for an educational benefit overpayment or loan made, insured, or guaranteed by a governmental unit, or made under any program funded in whole or in part by a governmental unit or nonprofit institution, or for an obligation to repay funds received as an educational benefit, scholarship, or stipend, unless excepting such debt from discharge under this paragraph will impose an undue hardship on the debtor and the debtor's dependents[.]

The Bankruptcy Code does not define "undue hardship." Courts have held, however, that Congress intended the term to be interpreted strictly, and on a case-by-case basis. *Albert v. Ohio Student Loan Comm'n (In re Albert)*, 25 B.R. 98 (Bankr.N.D.Ohio 1982); *United States v. Brown (In re Brown)*, 18 B.R. 219 (Bankr. D.Kan.1982); *Garmerian v. Rhode Island Higher Educ. Assistance Auth. (In re Garmerian)*, 81 B.R. 4 (Bankr.R.I.1987). As the court in *Brown* noted:

> It seems universally accepted, however, that "undue hardship" contemplates unique and extraordinary circumstances. Mere financial adversity is insufficient, for that is the basis of all petitions in bankruptcy.

*Brown*, 18 B.R. at 222. On the other hand, the Bankruptcy Code does not require that the debtor "live in abject poverty ... before a student loan may be discharged." *In re Mallinckrodt*, 260 B.R. 892, 900 (Bankr.S.D.Fla.2001) (*quoting In re Faish*, 72 F.3d 298, 305 (3rd Cir.1995)).

In addition:

> [A] loan ... that enables a person to earn substantially greater income over his working life should not as a matter of policy be dischargeable before he has demonstrated that for any reason he is unable to maintain himself and his dependents and to repay the educational debt.

*Report of the Commission of the Bankruptcy Laws of the United States,* House Doc. No. 93–137, Part I, 93rd Cong., 1st Sess. (1973) at 140, n. 14 and 15, reprinted in COLLIER ON BANKRUPTCY, Appendix 2 at PI-i. In this case the record includes evidence showing that Fulbright's student loans enabled him to earn substantially greater income over his working life, both in private practice and as public defender and as deputy county attorney for Ravalli County where he is presently employed. Fulbright's pretrial memorandum states he has been employed as a lawyer as a result of his law degree for 10 years, and that he "has no other job skills that are

more lucrative." Thus, Fulbright's student loans enabled him to earn "substantially greater income over" his working life.

■ In a complaint to determine the dischargeability of student loan debt, a debtor has the burden of proof to show evidence of undue hardship sufficient to discharge the debt. *In re Rifino*, 245 F.3d 1083, 1087–88 (9th Cir.2001); *In re Pederson*, 18 Mont. B.R. 429, 434 (Bankr. D.Mont.2000), *In re Thomsen*, 17 Mont. 493, 499, 234 B.R. 506, 510 (Bankr.D.Mont. 1999); *Healey v. Massachusetts Higher Educ. (In re Healey)*, 161 B.R. 389, 393 (E.D.Mich.1993); *Connecticut Student Loan Found. v. Keenan (In re Keenan)*, 53 B.R. 913 (Bankr.D.Conn.1985).

■ Courts have identified several factors and tests to consider when determining whether "undue hardship" exists in a particular case. *See Long v. Educational Credit Management Corp. (In re Long)*, 322 F.3d 549, 554 (8th Cir.2003) (identifies divergent body of authority, and then discusses the Brunner and the "totality of circumstances" tests). The United States Court of Appeals for the Second Circuit established the *Brunner* test for determining "undue hardship" in the educational loan context. *Brunner v. New York State Higher Educ. Services Corp.*, 831 F.2d 395, 396 (2nd Cir.1987). According to the Second Circuit in *Brunner*, in order to gain discharge under 11 U.S.C. § 523(a)(8)(B), a debtor must show:

(1) that the debtor cannot maintain, based on current income and expenses, a "minimal" standard of living for herself and her dependents if forced to repay the loans; (2) that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans; and (3) that the debt-

or has made good faith efforts to repay the loans.

*Id.* The Ninth Circuit Court of Appeals adopted the *Brunner* test as the appropriate test for determining what constitutes undue hardship under 11 U.S.C. § 523(a)(8)(B). *United Student Aid Funds v. Pena (In re Pena)*, 155 F.3d 1108, 1114 (9th Cir.1998) ("We adopt the *Brunner* test as the test to be applied to determine the 'undue hardship' required to discharge student loans in bankruptcy pursuant to 11 U.S.C. § 523(a)(8)(B)"); *Rifino*, 245 F.3d at 1087. In *Pena*, the Court summarized the *Brunner* test as thus,

First, the debtor must establish "that she cannot maintain, based on current income and expenses, a 'minimal' standard of living for herself and her dependents if forced to repay the loans." *Brunner*, 831 F.2d at 396. The court noted that this portion of the test "comports with common sense" and had already "been applied frequently as the minimum necessary to establish 'undue hardship.'" *Id.* (citing *In re Bryant*, 72 B.R. 913, 915 (Bankr.E.D.Pa.1987)).

Second, the debtor must show "that additional circumstances exist indicating that this state of affairs is likely to persist for a significant portion of the repayment period of the student loans." *Brunner*, 831 F.2d at 396. This second prong is intended to effect "the clear congressional intent exhibited in section 523(a)(8) to make the discharge of student loans more difficult than that of other nonexcepted debt." *Id.*

The third prong requires "that the debtor has made good faith efforts to repay the loans...." *Brunner*, 831 F.2d at 396. The "good-faith" requirement fulfills the purpose behind the adoption of section 523(a)(8). *Brunner*, 46 B.R. at 754–55. Section 523(a)(8) was a response to "a 'rising incidence of consum-

er bankruptcies of former students motivated primarily to avoid payment of education loan debts.'" *Id.*, (quoting the Report of the Commission on the Bankruptcy Laws of the United States, House Doc. No. 93–137, Pt. I, 93d Cong., 1st Sess. (1973) at 140 n. 14). This section was intended to "forestall students ... from abusing the bankruptcy system." *Id.*

*Pena* at 1111; *Rifino*, 245 F.3d at 1088–89.

■ This Court, in *House v. Montana Deferred Student Loan Corp. (In re House)*, 17 Mont. B.R. 321 (Bankr.D.Mont. 1999), followed the directive of the *Pena* Court by utilizing the three-prong *Brunner* test, which test is also applicable in the instant case. *See also Gettle v. Sallie Mae Servicing Corp. (In re Gettle)*, 19 Mont. B.R. 59, 257 B.R. 583 (Bankr.D.Mont. 2000); *Marsh v. Moorehead College (In re Marsh)*, 19 Mont. B.R. 39, 257 B.R. 569 (Bankr.D.Mont.2000); *Hatfield v. William D. Ford Federal Direct Consolidation Program (In re Hatfield)*, 19 Mont. B.R. 47, 257 B.R. 575 (Bankr.D.Mont.2000); and *Hiltz v. U.S. Dept. of Education (In re Hiltz)*, 20 Mont. B.R. —— (Bankr.D.Mont. 2003). The Debtor must prove all three elements identified in *Brunner* before discharge can be granted on grounds of undue hardship. *Rifino*, 245 F.3d at 1087–88; *Hiltz*, 20 Mont. B.R. at ——.

## I. First Prong.

■ As set forth above, the *Brunner* test starts with an examination of whether the debtor can maintain a minimal standard of living and still repay his student loan obligations. *Rifino*, 245 F.3d at 1088. To satisfy the first prong the debtor must demonstrate more than simply tight finances. *Rifino*, 245 F.3d at 1088; *In re Nascimento*, 241 B.R. 440, 445 (9th Cir. BAP 1999). In defining undue hardship, "courts require more than temporary financial adversity, but typically stop short of utter hopelessness." *Id.; see In re Faish*, 72 F.3d at 305 ("[T]he Bankruptcy Code does not require that the debtor 'live in abject poverty ... before a student loan may be discharged.'").

The Court concludes, based upon the following reasoning, that Fulbright has not satisfied the first *Brunner* prong. Fulbright demonstrated that his expenses consume a large part of his income. However, the evidence does not show that the Debtors cannot maintain a minimal standard of living for themselves and their dependents if he is forced to repay the DOE student loans.

Debtors tithe $430 per month to their church. Fulbright testified that tithing is an integral part of his family's religion, an integral "step of faith" whereby other things become possible. The Court respects Debtors' religious convictions, but Fulbright testified that tithing is voluntary and not required for his family's membership in their church.

A split of authority exists on the issue of whether charitable contributions such as tithing are reasonable expenses for purposes of determining undue hardship under § 523(a)(8). Judge Haines in *Educational Credit Management Corp. v. Savage (In re Savage)*, 311 B.R. 835, 840–41 n. 7 (1st Cir. BAP 2004) (a "totality of circumstances" case), provided the following insightful and instructive comment:

In undue hardship analysis, most courts employ the same model as is used to determine "disposable income" for Chapter 13 plan confirmation purposes. *See* § 1325(b)(2); *see, e.g., Sequeira v. Sallie Mae Servicing Corp. (In re Sequeira)*, 278 B.R. 861, 865 (Bankr.D.Or. 2001); *Peel v. SallieMae Servicing–Heal Loan (In re Peel)*, 240 B.R. 387 (Bankr. N.D.Cal.1999); *Brown v. Salliemae Servicing Corp. (In re Brown)*, 227 B.R. 540

(Bankr.S.D.Cal.1998). Although the problems are similar (ascertaining whether there are sufficient resources to fund payments), the objects (disposable income for plan confirmations vs. payment without undue hardship) differ. Under § 1325, a debtor is generally not required to alter reasonable lifestyle choices. *See, e.g., In re Woodman,* 287 B.R. 589 (Bankr.D.Me.2003) (citing Keith M. Lundin, Chapter 13 Bankruptcy § 165.1, at 165–1 (3d ed.2000)); *In re Tibbs,* 242 B.R. 511, 516 (Bankr.N.D.Ala. 1999) (court examining disposable income "is not expected to, and should not, mandate dramatic changes in the debtor's lifestyle to fit some preconceived norm for chapter 13 debtors"); *In re Sitarz,* 150 B.R. 710, 718 (Bankr.D.Minn. 1993) (when examining disposable income, courts need not require the debtor to lower his expenses to poverty level).[8] The same can be said of § 707(b) analysis, which generally focuses on the availability of sufficient disposable income to fund a Chapter 13 plan.

Under § 523(a)(8), the debtor's lifestyle (particularly expenses) is subjected to more rigid scrutiny. Courts differ on the degree of scrutiny applied, or, more precisely, on how much hardship a debtor can be expected to bear before it becomes "undue." But deference to a debtor's lifestyle choices is, to put it kindly, muted. *See, e.g., In re Mathews,* 166 B.R. 940, 945 (Bankr.D.Kan.1994) ("Ordinary 'garden variety' hardship does not suffice for purposes of § 523(a)(8), and debtor 'must show that the combination of the low income and exceptional circumstances is so severe and oppressive that there is no way that the debtor will ever be able to repay the debt and maintain a minimal standard of living' "); *In re Rappaport,* 16 B.R. 615, 617 (Bankr.D.N.J.1981) (discharge under § 523(a)(8) requires "total incapacity now and in the future to pay one's debts for reasons not within the control of the individual debtor"); *see also Penn. Higher Educ. Assistance Agency v. Faish (In re Faish),* 72 F.3d 298, 305–06 (debtor entitled to live in something more than "abject poverty," but must show "she could not maintain a minimal standard of living if forced to repay her loans" which is a showing of something more than "tight finances"). Eliminating some expenses that would be considered legitimate under § 1325 might well be done without creating "undue" hardship. *See generally [In re] Kopf,* 245 B.R. [731] at 743–44 [(Bankr.D.Me. 2000)] (discussing the notion of "undue" hardship).

As discussed above, courts have diverged on the issue of tithing in the undue hardship context imposed by 11 U.S.C. § 523(a)(8). *Compare Ritchie v. Northwest Education Loan Ass'n (In re Ritchie),* 254 B.R. 913, 919 (Bankr.D.Idaho 2000) (holding significant charitable donations are excluded as proper expense and are per se unreasonable when not required for membership) and *Educational Credit Management Corp. v. McLeroy (In re McLeroy),* 250 B.R. 872, 880 (N.D.Tex. 2000) (holding that Religious Liberty and Charitable Donation Protection Act of 1998 does not apply), with *Meling v. U.S. Dept. of Education (In re Meling),* 263 B.R. 275, 279 (Bankr.N.D.Iowa 2001), *aff'd,* 2002 WL 32107248 (N.D.Iowa 2002) ($100 monthly tithe is reasonable) and *Durrani v. Educational Credit Management Corp. (In re Durrani),* 311 B.R. 496, 503–04 (Bankr.

---

**8.** *But see In re Sutton,* 19 Mont. B.R. 220 (Bankr.D.2001) (monthly cigarette expense of $190 not reasonably necessary when no evidence presented that the expense was reasonably necessary).

N.D.Ill.2004) (established monthly tithe should not be overridden by the court). For clarity, this Court notes that note 12 in *Ritchie,* 254 B.R. at 920, contains the following statement: "The Court does not condone a de minimis exception to the analysis set forth here."

The court in *Meling,* 263 B.R. at 279 (a court following the totality of circumstances test for determining undue hardship), rejected the per se rule established in *Ritchie,* by citing to *In re Cline,* 248 B.R. 347, 349 (8th Cir. BAP 2000), where the appellate panel upheld a bankruptcy court finding that a $25 monthly tithing was "modest and reasonable under the circumstances."[9]

In the instant case, the Court concludes that Fulbright's monthly tithe of $430 is not de minimis, or modest and reasonable under the circumstances, and consistent with *Ritchie,* is a significant charitable donation not reasonably necessary for the maintenance and support of the Debtors or their dependents, and is per se unreasonable when not required for membership. It is fully 10% of the Debtors' income at $430 per month. Fulbright declined the Court's suggestion that a lesser contribution could satisfy his tithing obligation, testifying that tithing is by definition 10%. Furthermore, Fulbright admitted that tithing is not required for participation in his church, although he deeply believes it is important.

Fulbright cites *McLaney v. KHEAA,* 314 B.R. 228, (Bankr.M.D.Ala.2004), for the proposition that this Court should allow his tithing for the same purposes that tithing is allowed under 11 U.S.C. § 548(a)(2), 11 U.S.C. § 707(b), and 11 U.S.C. § 1325(b)(2)(A), based upon Debtors' long history of bona fide charitable giving. The debtors in *McLaney* tithed $220 per month to their church. 314 B.R. at 235.

■ Under the facts of this case, this Court agrees with Judge Pappas in *Ritchie* that the plain language of § 523(a)(8) makes no reference at all to treatment to be given religious or charitable contributions in making undue hardship determinations, while elsewhere in the Code the topic of charitable contributions is specifically addressed. *Ritchie,* 254 B.R. at 920. *See also In re Cavanagh,* 242 B.R. 707 (Bankr.D.Mont.2000) *aff'd* 250 B.R. 107 (9th Cir. BAP 2000) (charitable contributions to the extent not exceeding 15% are reasonable). "Where Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposefully in the disparate inclusion or exclusion." *Id.,* quoting *Bates v. United States,* 522 U.S. 23, 29–30, 118 S.Ct. 285, 139 L.Ed.2d 215 (1997).

> If Congress enacted into law something different from what it intended, then it should amend the statute to conform it to its intent. "It is beyond our province to rescue Congress from its drafting errors, and to provide for what we might think ... is the preferred result." *United States v. Granderson,* 511 U.S. 39, 68[, 114 S.Ct. 1259, 127 L.Ed.2d 611] (1994) (concurring opinion). This allows both of our branches to adhere to our respected, and respective, constitutional roles. In the meantime, we must determine intent from the statute before us.

*Lamie v. United States Trustee,* 540 U.S. 526, 124 S.Ct. 1023, 1034, 157 L.Ed.2d 1024 (2004).

---

**9.** The Eighth Circuit follows the less restrictive "totality of circumstances" approach to the undue hardship inquiry and does not follow the *Brunner* test. *See Long v. Educational Credit Management Corp.,* 322 F.3d 549, 554 (8th Cir.2003).

Fulbright argues the opposite, i.e., that provisions allowed in one act, such as charitable contributions allowed in §§ 548(a)(2), 707(b), and 1325(b), which are omitted in another on the same subject matter, will be applied when the purposes of the two acts are consistent. *McLaney*, 314 B.R. at 237 (quoting 2B Norman J. Singer, *Sutherland Statutes and Statutory Construction* § 51:2 (6th ed.2004)). Based on that authority the court in *McLaney* held that "bona fide charitable" giving within the parameters of § 548(a)(2) may be considered within the debtors' reasonably necessary expenses under § 523(a)(8). *Id.*, 314 B.R. at 237.

■ This Court respectfully declines to follow Judge Williams's reasoning in *McLaney*. First, it goes against the canon of statutory construction quoted above, *Bates v. United States*, 522 U.S. at 29–30, 118 S.Ct. 285, which is mandatory authority. Second, this Court does not view the subject matter of § 523(a)(8) (discharge of educational loans based on undue hardship) as the same subject matter or purpose as the subject matter and purposes of § 548(a)(2) (recovery of fraudulent transfers), § 707(b) (dismissal for substantial abuse if Chapter 7), and § 1325(b) (confirmation of a Chapter 13 plan). *See Savage*, 311 B.R. at 840 n. 7. On the contrary, if Congress intended to allow tithing based upon debtors' long history of bona fide charitable giving when determining undue hardship under § 523(a)(8) as allowed in *McLaney*, in this Court's view Congress could have and would have drafted § 523(a)(8) to include a specific provision allowing charitable giving as it did in §§ 548(a)(2), 707(b), and 1325(b)(2)(A). *Ritchie*, 254 B.R. at 920–21. The Court further notes that, although charitable contributions are allowed under § 1325(a)(2)(A) when determining disposa-

ble income for purposes of confirming a Chapter 13 plan, student loan debts of the kind specified in § 523(a)(8) are specifically excepted from discharge granted after completion of plan payments under both the "superdischarge" provision of 11 U.S.C. § 1328(a)(2), and under the hardship discharge provided under § 1328(c)(2). As Congress did not provide for charitable giving in § 523(a)(8) as it did elsewhere in the Code, and indeed specifically excepted student loan debts from a Chapter 13 discharge after allowing charitable contributions in the confirmation process, this Court declines to follow the *McLaney* line of reasoning, and instead this Court holds that religious and significant charitable donations are per se not proper expenses in determining whether discharging student loan debt would result in undue hardship under § 523(a)(8). *Ritchie*, 254 B.R. at 921.

The first prong of the *Brunner* test requires that the debtors show they cannot repay their student loans and maintain a minimal standard of living. *Pena*, 155 F.3d at 1111. This prong "comports with common sense". *Id.; Brunner*, 831 F.2d at 396; *In re Pederson*, 18 Mont. B.R. at 438. Applying this common sense standard to the evidence, the Court concludes that Fulbright has not satisfied his burden of proof to show that he cannot maintain a minimal standard of living and still make payments on his DOE student loan obligations. The Fulbrights' $430 monthly tithe being well above any de minimis amount, 10% of Debtors' income, it represents in this Court's view an ability for Fulbright to make payments under the William D. Ford Program, in which he has steadfastly refused to participate for 8 years, while maintaining a minimal standard of living [10].

---

10. It must be noted, notwithstanding the

hardship to their parents, that Debtors'

The William D. Ford Program is found at 34 C.F.R. § 685.100 *et seq*. Faatalale's Decl., 8th page, ¶ 21 and Attachment I. It provides for loan consolidation and an income contingent repayment plan, 34 C.F.R. § 685.209, under which student loan debtors must make payments only if their adjusted gross income exceeds the HHS Poverty Guidelines. Unpaid portions of loans under the income contingent repayment plan are cancelled after 25 years. 34 C.F.R. § 685.209(c)(4)(iv); *see Hallberg v. Montana Guaranteed Student Loan Program*, 19 Mont. B.R. 416, 433 (Bankr.D.Mont.2002). *See generally Durrani*, 311 B.R. at 508 (discussing discharge after 25 year term as taxable event).

If Fulbright applied for the William D. Ford Program and consolidated his loans under the income contingent repayment plan, depending on Debtors' adjusted gross income and the applicable HHS Poverty Guidelines, their required payment may be expected to be reduced well below the $950 per month payment which Fulbright testified would be required over 10 years, thus having little impact on Debtors' standard of living. *Hiltz*, 20 Mont. B.R. at ——. The absence from the record of any evidence on this point must weigh against the party with the burden of proof, Fulbright.

For these reasons, the Court concludes that Fulbright has failed to satisfy the first prong of the *Brunner* test and therefore the student loans owed to DOE cannot be discharged on grounds of undue hardship. *Rifino*, 245 F.3d at 1087–88. Having failed his burden of proof under the first prong, it is not necessary for the Court to address the remaining 2 prongs of the *Brunner* test. Notwithstanding, the Court deems it appropriate to address the third

prong since the parties emphasized that prong in their arguments.

## II. Third Prong.

The third *Brunner* prong requires that the debtor has made good faith efforts to repay the student loans. *Pena*, 155 F.3d at 1111; *Rifino*, 245 F.3d at 1087. Fulbright consolidated his loans, and the record includes evidence that he made payments totaling $2,267.00 demonstrating good faith. Faatalale's Decl., 5th page, ¶ 12. On the other hand, Fulbright has steadfastly refused to participate in the available federal William D. Ford Program, under which he might find relief in the form of loan consolidation under an income contingent repayment plan while still providing for some payment on his student loans. In 8 years, while interest accrued, Fulbright refused to consider the William D. Ford Program because DOE and its collection agents insisted that he accept their amount, which he contends includes unjustified capitalization of interest. However, at trial Fulbright failed to offer any evidence that the DOE or its assignors wrongfully capitalized the accrued interest, which remained unpaid and growing during the entire period. By failing to offer evidence or argument demonstrating that DOE's claim for interest was unjustified, Fulbright failed to satisfy his burden of proof. Furthermore, Fulbright waited too long to raise this argument.

DOE filed Proof of Claim No. 6 in Fulbright's Chapter 7 bankruptcy case on March 1, 2004, asserting a claim in the amount of $85,992.70. The Debtors did not file an objection. This Court discussed the applicable law governing the burden of proof for allowance of claims in *In re*

---

$200,000 home is unencumbered except for IRS liens which are a fraction of the stated value.

*Eiesland,* 19 Mont. B.R. 194, 208–09 (Bankr.D.Mont.2001):

> A validly filed proof of claim constitutes *prima facie* evidence of the claim's validity and amount. F.R.B.P. 3001(f). The Ninth Circuit recently explained the general procedure for allocating burdens of proof and persuasion in determining whether a filed claim is allowable in *Lundell v. Anchor Const. Specialists, Inc.,* 223 F.3d 1035, 1039 (9th Cir.2000):
>
>> A proof of claim is deemed allowed unless a party in interest objects under 11 U.S.C. § 502(a) and constitutes *"prima facie* evidence of the validity and amount of the claim" pursuant to Bankruptcy Rule 3001(f). See also Fed. R. Bankr.P. 3007. The filing of an objection to a proof of claim "creates a dispute which is a contested matter" within the meaning of Bankruptcy Rule 9014 and must be resolved after notice and opportunity for hearing upon a motion for relief. See Adv. Comm. Notes to Fed. R. Bankr.P. 9014.
>>
>> Upon objection, the proof of claim provides "some evidence as to its validity and amount" and is "strong enough to carry over a mere formal objection without more." *Wright v. Holm (In re Holm),* 931 F.2d 620, 623 (9th Cir.1991) (quoting 3 L. King, Collier on Bankruptcy § 502.02, at 502–22 (15th ed.1991)); *see also Ashford v. Consolidated Pioneer Mort. (In re Consol. Pioneer Mort.),* 178 B.R. 222, 226 (9th Cir. BAP 1995), aff'd, 91 F.3d 151, 1996 WL 393533 (9th Cir.1996). To defeat the claim, the objector must come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *In re Holm,* 931 F.2d at 623.

* * * *

>> "If the objector produces sufficient evidence to negate one or more of the sworn facts in the proof of claim, the burden reverts to the claimant to prove the validity of the claim by a preponderance of the evidence." *In re Consol. Pioneer,* 178 B.R. at 226 (quoting *In re Allegheny Int'l, Inc.,* 954 F.2d 167, 173–74 (3d Cir.1992)). The ultimate burden of persuasion remains at all times upon the claimant. *See In re Holm,* 931 F.2d at 623.

*See also Knize,* 210 B.R. at 778; *Matter of Missionary Baptist Foundation of America,* 818 F.2d 1135, 1143 (5th Cir. 1987); *In re Stoecker,* 143 B.R. 879, 883 (N.D.Ill.1992), *aff'd in part, vacated in part,* 5 F.3d 1022 (7th Cir.), *reh'g denied* (1993).

Thus, the Bank's Proof of Claim No. 2 is *prima facie* evidence of the validity and amount of its claim under Rule 3001(f), and the Debtor has the burden of showing sufficient evidence and to "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves." *Lundell,* 223 F.3d at 1039 (quoting *Holm* ). This Court finds that Eric, as the objecting party, has not produced sufficient evidence to cause the burden to revert to the Bank to prove the validity and amount of its claim. *Lundell,* 223 F.3d at 1039 (quoting *In re Consol. Pioneer,* 178 B.R. at 226).

 The analysis under *Lundell* was reiterated by the Ninth Circuit in *In re Los Gatos Lodge, Inc.,* 278 F.3d 890, 894 (9th Cir.2002). Applying this analysis to the instant case, no allegation or showing exists that DOE's Proof of Claim No. 6 was not filed in accordance with the applicable rules. The Debtors did not file an objection. Therefore, Proof of Claim No.

6 is given *prima facie* effect of its validity and amount by Rule 3001(f), including the interest component which Fulbright disputes, thereby placing the burden of proof upon the Debtors to come forward with sufficient evidence and "show facts tending to defeat the claim by probative force equal to that of the allegations of the proofs of claim themselves". *Lundell,* 223 F.3d at 1039 (quoting *In re Holm,* 931 F.2d at 623); *Eiesland,* 18 Mont. B.R. at 209.

Fulbright for years disputed the DOE's right to capitalize the interest, and refused to avail himself of available income contingent repayment plans because of his dispute, during which period interest continued to accrue. Ultimately, Fulbright failed to object to DOE's Proof of Claim and prove his arguments in accordance with applicable rules of procedure in a timely manner, with the result that Fulbright must be deemed to have failed his burden of proof. By failing to accept invitations to enroll in the William D. Ford Program which were offered to him, and failing in the end to properly raise or prove his allegations against DOE's claim for interest, the Court finds that Fulbright failed his burden of proof under the good faith third *Brunner* prong.

Fulbright having failed to satisfy the first and third *Brunner* prongs, he has failed the burden of proof to show undue hardship under § 523(a)(8) to discharge his student loans to DOE.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 1334 and 157.

2. This is a core proceeding to determine the dischargeability of educational loans under 28 U.S.C. § 157(b)(2)(I) and 11 U.S.C. § 523(a)(8).

3. Plaintiff failed to satisfy his burden of proof under § 523(a)(8) by a preponderance of the evidence. In particular, Plaintiff failed to satisfy the first prong of the test set forth in *Brunner,* 831 F.2d at 396, and *Pena,* 155 F.3d at 1114, of showing that he is not able to maintain a minimal standard of living and repay his student loans when he tithes $430 per month in voluntary religious contributions to his church. In addition Plaintiff failed to satisfy the third prong of the test set forth in *Brunner.* Thus, Plaintiff failed to show that excepting his United States Department of Education student loan debts from his discharge will impose an undue hardship on Debtors or their dependents.

**IT IS ORDERED** a separate Judgment shall be entered in this adversary proceeding for the Defendant United States Department of Education, dismissing Plaintiff's dischargeability complaint.