In re Stephen ZUCCARELL, Debtor.

No. 07–30026.

United States Bankruptcy Court, N.D. Ohio.

July 9, 2007.

Thomas E. Cafferty, Toledo, OH, for Debtor.

Linda M. Battisti, Office of the U.S. Trustee, Cleveland, OH, for U.S. Trustee.

## DECISION AND ORDER

RICHARD L. SPEER, Bankruptcy Judge.

This cause comes before the Court after a Hearing on the Motion of the United States Trustee to Dismiss Case Pursuant to 11 U.S.C. § 707(b)(1). At the conclusion of the Hearing, the Court took the matter under advisement so as to afford time to thoroughly consider the issues raised by the Parties. The Court has now had this opportunity, and finds, for the reasons now explained, that the Motion of the United States Trustee should be Granted subject to the limitation set forth herein.

## DISCUSSION

Under § 707(b)(1), a court may dismiss a Chapter 7 case filed by an individual debtor whose debts are primarily consumer debts if it finds that the granting of relief would be "an abuse." This paragraph was added to the Bankruptcy Code on October 17, 2005, with the enactment of the Bankruptcy Abuse Prevention and Consumer Protection Act. A primary purpose of this Act, which is otherwise known as BAPCPA, was to curb perceived abuses within the bankruptcy process. *In re King,* 362 B.R. 226, 231 (Bankr.D.Md. 2007). In this effort, § 707(b)(1) made a number of substantive changes to its predecessor, § 707(b).

First, § 707(b)(1) makes the standard for dismissal less stringent; prior to BAPCPA, a case could only be dismissed for "substantial abuse," as opposed to now for simply "abuse." Congress also eliminated in BAPCPA what had otherwise been a safeguard for the debtor: under the former § 707(b) there existed a pre-

sumption in favor of allowing the debtor's case to proceed. *In re Haar*, 360 B.R. 759, 760 (Bankr.N.D.Ohio 2007). Now, in the absence of such a presumption, it would appear that the overall burden is on the debtor to show that he or she is entitled to Chapter 7 relief. *See* 29 AM JUR.2D *Evidence* § 158 (2006) ("the burdens of production and persuasion generally fall upon the party seeking a change in the status quo, or upon the party that asserts the claim.").

In addition to these changes, Congress also prescribed two alternative standards through which the existence of "abuse" is to be gauged for purposes of § 707(b)(1). First, in § 707(b)(2), Congress provided that, under a "means test" formula, abuse may be presumed in instances where an ability to pay threshold is exceeded. Second, § 707(b)(3) was added to the Code by BAPCPA to provide that, even if no presumption of abuse arises, a court could still dismiss a case based upon the particular circumstances of the case.

In its Motion to Dismiss, the UST, although it cited to both standards,[1] limited its arguments at the Hearing to just that of § 707(b)(3). In particular, the UST relied on the "totality of the circumstances"

test set forth subparagraph (B) § 707(b)(3) which provides:

> In considering under paragraph (1) whether the granting of relief would be an abuse of the provisions of this chapter in a case in which the presumption in subparagraph (A)(i) of such paragraph does not arise or is rebutted, the court shall consider—
>
> > (B) the totality of the circumstances (including whether the debtor seeks to reject a personal services contract and the financial need for such rejection as sought by the debtor) of the debtor's financial situation demonstrates abuse.

As a determination of dismissal under this provision directly involves the ability of a debtor to receive a discharge and directly affects the creditor-debtor relationship, this matter is a core proceeding over which this Court has the jurisdictional authority to enter final orders. 28 U.S.C. §§ 157(b)(2)(J)/(O); 1334.

■ This Court has observed, as have others, that the "totality of the circumstances" test under § 707(b)(3) is best understood as a codification of pre-BAPCPA case law.[2] Under pre-BAPCPA law, a

---

**1.** In citing to § 707(b)(2) as one of the grounds for dismissal, the UST took the position that, since the Debtor was surrendering his residence, he could not expense that property under the provision's "means test" formula. (Doc. No. 23, at pg. 6). Previously, in the case of *In re Haar*, 360 B.R. 759 (Bankr. N.D.Ohio 2007), the UST presented this exact issue to the Court. The Court, however, squarely rejected the argument, holding that a debtor, who surrenders secured property, is not prohibited from expensing payments on that property in their "means test" calculation. *Id.* at 768. As the *In re Haar* decision was issued prior to the UST's Motion to Dismiss in this matter, and since no additional arguments on this issue were made in its Motion, the Court has attached a copy of the *In re Haar* decision hereto for the edification of the UST.

**2.** In *In re Oot*, this Court stated that for "purposes of their application, the two grounds for dismissal under § 707(b)(3) are best understood as a codification of pre-BAPCPA case law, with there existing an abundance of reported cases wherein, prior to the passage of BAPCPA, courts dismissed Chapter 7 cases based upon both a debtor's 'bad faith' and where the 'totality of circumstances' revealed that the debtor was undeserving of Chapter 7 relief." 368 B.R. 662 (Bankr.N.D.Ohio 2007).

Other courts applying pre-BAPCPA case law to § 707(b)(3) include: *In re McGillis*, 370 B.R. 720 (Bankr.W.D.Mich.2007); and *In re dePellegrini*, 365 B.R. 830 (Bankr.S.D.Ohio 2007).

The seminal Sixth Circuit cases are: *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989), and

case could be dismissed for abuse if it were found that there was a "want of need" on the part of the debtor. *In re Krohn*, 886 F.2d 123, 126 (6th Cir.1989). In accordance with this standard, the UST maintains that the Debtor lacks any "need" for Chapter 7 relief because he "can make payments to creditors without depriving himself of necessary living expenses." (Doc. No. 23, at pg. 7).

■ As support for this position, the UST pointed out that the Debtor's unsecured debts are relatively small in amount, totaling between $6,000.00 and $16,000.00 depending on the existence and/or amount of any deficiency claim that may arise as the result of the Debtor having surrendered his residence. In addition, the UST questioned the budgetary figures submitted by the Debtor which show that his household budget has a deficiency of $40.00 per month. (Doc. No. 1). In bringing into question the propriety of the Debtor's monthly budget, the UST did take issue with the income side of the equation whereby, after taking deductions for taxes, child support for one child and union dues, the Debtor set forth a net monthly household income of $2,702.00. Rather, the UST argued that, in setting forth a total of $2,742.00 in necessary monthly expenses, the Debtor took three impermissible deductions: an $852.00 payment for a home mortgage; an allocation of $150.00 for home maintenance; and a $250.00 expense for recreation.

According to the UST, the first two expenses are excessive for the simple reason that they no longer exist—with the Debtor having surrendered his home through the bankruptcy process. In greater detail, it is the position of the UST that any "needs" based determination under § 707(b)(3) should be based upon a housing expense of $550.00, representing what the Debtor presently pays in rent. For the latter expense, it is the position of the UST that it is improper for someone such as the Debtor, who asserts an inability to pay their unsecured debt, to allocate $250.00 per month toward recreation.

When determining a debtor's need (or lack thereof) for Chapter 7 relief, the question before the Court is normally one of the debtor's ability to repay his or her debts. The function served here goes to the core of bankruptcy; debtors who have the ability to pay their debts should. An often utilized yardstick in this respect is the amount of "disposable income" the debtor would have available in a hypothetical Chapter 13 case to repay his or her creditors. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434–35 (6th Cir.2004); *In re Glenn*, 345 B.R. 831, 836 (Bankr.N.D.Ohio 2006).

Disposable income is defined as that income received by a debtor which is not reasonably necessary to be expended for the maintenance or support of the debtor or a dependent of the debtor. *In re Pier*, 310 B.R. 347, 353 (Bankr.N.D.Ohio 2004). And as first argued by the UST, an expense for recreation does not closely conform to this requirement. By its very nature, an expense for recreation is discretionary, and thus does not have to be expended for the debtor's maintenance.

This does not mean that such an expense is *per se* improper. Bankruptcy law does not require that a debtor live a monastic lifestyle. *In re Fulbright*, 319 B.R. 650, 658 (Bankr.D.Mont.2005). However, the higher the amount a debtor claims as an expense for recreation, the more likely it is that the propriety of that expense will be scrutinized. Moreover, given its discretionary character, a debtor should offer a

*Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434–35 (6th Cir.2004).

viable reason why such an expense is reasonably necessary. But in this particular matter, the Debtor, beyond vague statements, was unable to offer any viable reason why, to the detriment of his unsecured creditors, he needed to allocate $250.00 per month toward recreation. *See, In re DeRosear,* 265 B.R. 196, 210 (Bankr.S.D.Iowa 2001) (in an action brought under § 707(b), unsupported recreation expense of $269.00 reduced to $50.00).

But even discounting the recreation expense, the Court cannot ascertain, on the part of the Debtor, any actual "need" for Chapter 7 relief. By his own accounting, he has sufficient disposable income available to pay 100% of his unsecured debt. As set forth above, the Debtor, having surrendered his home, is no longer required to devote $852.00 for the payment of a mortgage; nor is the Debtor required to allocate $150.00 per month for home maintenance. Instead, the Debtor now pays a flat rental fee of $550.00 per month.

Resultantly, the Debtor has, without making any other adjustments to his monthly budget, an additional $452.00. Against this available income, the figures submitted by the Debtor show that his unsecured debts are relatively small in amount, totaling between $6,000.00 and $16,000.00 depending on the existence and/or amount of any deficiency claim that may arise from the surrender of his residence. Thus, even without making any other adjustments to his monthly budget, the Debtor has sufficient income at his disposal to fully pay his creditors. Taken over 36 months, the availability of $452.00 per month yields $16,272.00, an amount greater than the upper limit of the Debtor's total unsecured debt. Therefore, it is difficult to discern how the Debtor, having

the ability to repay most if not all of his unsecured debts, has any "need" for Chapter 7 relief.

The Debtor's lack of need for Chapter 7 relief is also buttressed by another relevant factor: The Debtor enjoys a stable source of future income, and is unlikely to soon experience any precipitous decline in his income. *In re Krohn,* 886 F.2d 123, 126 (6th Cir.1989). This finding is based upon the Court's observation that the Debtor, who is young in age, did not appear to have any health problems. Just as important, no evidence was introduced to contradict this observation; nor was any evidence offered that the Debtor's job,— from which he earns $5,290.00 per month, an amount above the state median[3]—is endangered.

The Debtor, however, seeks to put his financial circumstances in a different light. According to him, a review of his budgetary expenses, including those against which the UST takes issue, demonstrate that he does not live an "extravagant lifestyle." (Doc. No. 27, at pg. 6). For example, he points out that he owns just one vehicle for his personal use, "a 12 year-old Jeep with over 150,000 miles on it." *Id.*

■ The Debtor's position brings to light what is often a typical paradigm in an action brought under § 707(b): a debtor seeking to maintain, at the expense of his or her creditors, an extravagant lifestyle. *Kornfield v. Schwartz (In re Kornfield),* 164 F.3d 778, 784 (2nd Cir.1999). Yet, the *sine qua non* of an action under § 707(b) does not solely rest on the existence of an extravagant lifestyle. Rather, the focus is more basic.

---

**3.** *See* Census Bureau Median Family Income By Family Size available at www.usdoj.gov/ ust/eo/bapcpa/20060213/meanstesting.htm.

Under § 707(b), the overall inquiry is whether the debtor is seeking to take unfair advantage over his or her creditors. *In re Krohn,* 886 F.2d at 126. As stated, this may occur when a debtor lacks the "need" for Chapter 7 relief; or it may also occur if the debtor is less than honest with the bankruptcy process. *Id.* Hence, even accepting the Debtor's veracity regarding his unostentatious lifestyle, that fact alone is not dispositive of the matter. The Debtor must still establish that, contrary to what the points raised by the UST have shown, he has a "need" for Chapter 7 relief.

Notwithstanding, the Debtor also contends that he is entitled to Chapter 7 relief because, having passed the "means test" of § 707(b)(2), it should be "presumed that he does not have the ability to pay a substantial portion of his debts." (Doc. No. 27, at pg. 5). This argument, however, whereby a debtor's ability to repay his debts plays a diminished role in a "totality of circumstances" analysis under § 707(b)(2), has been rejected by the Court. First, in the case of *In re Robert/Sherrie Haar,* it was explained:

> [I]t is difficult to see how, as the Debtors argue, the 'means test' of § 707(b)(2) would be rendered 'meaningless' if a case could be dismissed under § 707(b)(3) based solely upon a debtor's ability to pay. Sections 707(b)(2) and 707(b)(3) serve entirely different functions. On the one hand, the 'means test' of § 707(b)(2) is a rigid, mechanical formula which, under certain conditions, gives rise to a presumption of abuse which the debtor may then rebut. By comparison, § 707(b)(3) is an equitable test, with it being incumbent upon the movant to sustain a showing that the necessary conditions exist to warrant dismissal.

373 B.R. 493, 499, Case No. 06–31270, 2007 WL 1655498 *5 (2007). Then, in the case of *In re Wright,* this Court also observed:

> Even in the absence of any presumption of abuse arising under § 707(b)(2), the following paragraph, § 707(b)(3), provides that a court may still dismiss a case based upon the particular circumstances of the case. This basis for dismissal is completely independent from § 707(b)(2); thus simply because no presumption arises according to the 'means test,' does not insulate a debtor from a finding of abuse.

364 B.R. 640 (Bankr.N.D.Ohio 2007).

Other courts have generally come to the same conclusion. For example, in *In re Mestemaker,* another case out of this division, the Honorable Mary Ann Whipple rejected the debtors' contention that "the means test calculation is conclusive evidence regarding their ability (or inability) to pay their unsecured creditors." 359 B.R. 849, 853 (Bankr.N.D.Ohio 2007). Similarly, in *In re Baldino,* it was just recently held that, notwithstanding the "means test" of § 707(b)(2), "a debtor's ability to pay is sufficient to support a finding of abuse under § 707(b)(3)." 369 B.R. 858, 860 (Bankr.M.D.Pa.2007). Accordingly, based upon this persuasive authority, as well as this Court's prior rulings, the Debtor's contention must be rejected; passing the "means test" of § 707(b)(2) will not give rise to a presumption that a debtor, for purposes of § 707(b)(3), does not have the ability to repay his or her debts.

Consequently, as the Debtor has been unable to satisfactorily rebut those considerations which show that he has the ability to repay his debts, this case must be dismissed as an abuse of the bankruptcy process within the meaning within the meaning of §§ 707(b)(1) and (b)(3). In

summation, these considerations are: First, the Debtor enjoys a stable source of income. Second, the Debtor has a relatively low amount of unsecured debt. Finally, under a "disposable income" analysis, the Debtor, whose salary is above the state median, has sufficient income available to repay his unsecured debts. Pursuant, however, to § 105(a) and § 707(b)(1), the immediate dismissal of this case will be stayed so as to afford the Debtor the opportunity to convert this case to one under Chapter 13 of the Bankruptcy Code.

In reaching the conclusions found herein, the Court has considered all of the evidence, exhibits and arguments of counsel, regardless of whether or not they are specifically referred to in this Decision.

Accordingly, it is

**ORDERED** that the Clerk, United States Bankruptcy Court, is directed to prepare for presentation to the Court an order of dismissal under 11 U.S.C. § 707(b)(1) if, at the opening of business, on Friday, July 27, 2007, this case is still proceeding under Chapter 7 of the United States Bankruptcy Code.

**IT IS FURTHER ORDERED** that, subject to the Debtors' election to convert this case, the Motion of the United States Trustee to Dismiss under 11 U.S.C. § 707(b)(1) and § 707(b)(3), be, and is hereby, GRANTED.